29 F.3d 1062
 63 USLW 2116, 18 Employee Benefits Cas. 1772
 Philip BARTLING; Lee E. Anthony; Jim Anon; David
Armstrong; Carl Benefield; James Bushu; Don Capper;
Howard Collingsworth; Ron Craig; Lloyd Daugherty; Nelson
Deane; Jerry DeMent; Larry Donohue; Richard Dawson;
Philip Edwards; Sam Egger; James Fairchild; William
Einnell; Melvin Foster; Ernest Frazier; LaRue Gregory;
Thedore Grinvalds; Robert Grubbs; John Geyer; Maxine
Harris; Harry Hartzell; Don Headlee; Richard Hines;
Darrel Holly; John Huffman; Dianne Jordan; Thomas Lease;
Robert Lovell; Michael Mason; Rick May; Ronald McBee;
Vaughn McKee; William Monroe; Rodger Myers; David Ogle;
Larry Porter; Edward Pressnell; Betty Rooney; William
Sark; Ed Smith; James Standard; John Steiger; Thomas
Stevens; Walter Strange; James Vest; John Walters;
Robert Wilkerson; Thomas Wilkins; Robert Wilson, Jr.;
Stanley Woodhouse; Joseph Wren; William Zinkhorn; John
Dotson; Linda Hartzell; Ronald C. Fitzwater; Caren S.
LeMaster; Jon Powers; John Yeatts; Don Rigney, Sr.; Don
Warfield; Frank Wildman; Helen J. Ream; Eugene C. Haerr,
Jr.; Walter R. Egger; James Doyle; Carl White; Deborah
Cooke; Marlin Reynolds; Robert Burk; John L. Connors;
Merrie Lou Tindall; Roanna M. Griffith; and Carol S.
Palmer, Plaintiffs-Appellants, Cross-Appellees,
v.
FRUEHAUF CORPORATION; Kelsey-Hayes Company; Retirement
Committee of Fruehauf Corporation; Plan Administrator of
Retirement Income Plan for Salaried Employees of
Kelsey-Hayes Company; Retirement Income Plan for Salaried
Employees of Kelsey-Hayes Company; and Kelsey-Hayes Company
Separation Allowance Plan for Salaried Employees of
Kelsey-Hayes Company, Defendants-Appellees, Cross-Appellants,
Citibank, N.A.; Irving Trust Company, Trustee of Retirement
Income Plan for Salaried Employees of Kelsey-Hayes
Company, Defendants.
 Nos. 93-3281, 93-3324.
 United States Court of Appeals,
Sixth Circuit.
 Argued May 2, 1994.
Decided July 19, 1994.
As Amended Sept. 23, 1994.
Rehearing Denied Jan. 17, 1995.
 
 Stephen A. Markus (argued and briefed), Ronald L. Kahn (briefed), Ulmer & Berne, Cleveland, OH, Ken C. Kotecha, Pennington & Kotecha, Springfield, OH, for Philip Bartling.
 Jeffrey G. Heuer, Brian G. Shannon (briefed), Thomas H. Williams, Alexander Bradgon (argued), Jaffe, Raitt, Heuer & Weiss, Detroit, MI, for Fruehauf Corporation, Kelsey-Hayes Co. and Kelsey-Hayes Sep Plan.
 Before: JONES and BATCHELDER, Circuit Judges; and GILMORE, Senior District Judge.*
 AMENDED OPINION
 NATHANIEL R. JONES, Circuit Judge.
 
 
 1
 Plaintiffs, 78 individual salaried non-bargaining unit employees of what used to be the SPECO Division of the Kelsey-Hayes Company ("Kelsey-Hayes"), brought this ERISA action against: Kelsey-Hayes; its parent, the Fruehauf Corporation ("Fruehauf"); its former employee benefit pension plan ("Pension Plan"); the Retirement Plan administrator, the Retirement Committee of Fruehauf Corporation ("Committee"); and Kelsey-Hayes's severance pay plan ("Separation Plan").[1] The issues on appeal involve a pension plan administrator's duty to furnish certain documents upon the request of a plan participant, and the degree of deference a district court owes to an administrator regarding entitlement to severance pay benefits. The district court found in favor of Plaintiffs in part and in favor of Defendants in part. We affirm in part, reverse in part, and remand for further proceedings.
 
 I.
 
 2
 On October 27, 1986, the Committee announced that it would terminate the Pension Plan as of December 31, 1986, and institute a new plan as of January 1, 1987. On November 19, 1986, each of the plaintiffs received a letter stating his or her employment data that would be used to calculate his or her vested benefits upon the termination of the Plan. In December, Defendants presented a videotape describing the termination of the Plan; all of the plaintiffs were invited to see it. Additionally, Plaintiffs each received a booklet that discussed the Plan termination. Also in December 1986, the Pension Plan was amended.
 
 
 3
 On December 23, 1986, the SPECO Division of Kelsey-Hayes was incorporated as the SPECO Corporation. On December 31st, the Pension Plan terminated as planned.
 
 
 4
 On June 5, 1987, Kelsey-Hayes and the Committee filed documents relating to the termination of the Pension Plan with the Internal Revenue Service and the Pension Benefit Guarantee Corporation. These documents revealed that the company and the Committee intended to have approximately $29 million in Pension Plan assets revert to Kelsey-Hayes.[2] Also on June 5, Kelsey-Hayes sent benefit commitment letters to all Pension Plan participants, which described the monthly benefit to which the participant was entitled, and how that benefit amount had been calculated. The letter invited participants to contact a representative, Bill Schnorenberg, with their questions. Later that month, Schnorenberg held an informational meeting for SPECO employees, not only to discuss the termination of the Plan, but also to discuss the pending sale of SPECO to Grabill Aerospace Industries, Ltd. ("Grabill").
 
 
 5
 On July 13, 1987, Ronald L. Kahn, counsel for 52 of the plaintiffs, sent a letter to the Committee requesting various documents that he claimed were needed to determine whether the plaintiffs were receiving everything to which they were entitled. The documents requested included:
 
 
 6
 (1) the Pension Plan;
 
 
 7
 (2) the December 1986 amendment to the Plan;
 
 
 8
 (3) the most recent favorable letter issued by the IRS relating to the tax-qualified status of the Plan;
 
 
 9
 (4) filings with the IRS and the PBGC relating to the Pension Plan;
 
 
 10
 (5) the Plan's "Form 5500" (Annual Return/Report of Employee Benefit Plan) for the past three years;
 
 
 11
 (6) actuarial reports of the Plan for the past three years;
 
 
 12
 (7) the latest version of the Summary Plan Description with respect to the Pension Plan;
 
 
 13
 (8) benefit computations made in connection with the Pension Plan termination for each of the 52 then represented by counsel;
 
 
 14
 (9) the specification sheet being used in connection with the termination to solicit bids from insurance companies; and
 
 
 15
 (10) provisions in the purchase agreement with Grabill relating to pension and welfare benefits.
 
 
 16
 On August 6, 1987, Grabill purchased SPECO as planned. On August 31, Kahn sent a follow-up letter, now on behalf of 64 of the plaintiffs. On September 11, 1987, Fruehauf furnished items 1, 2, 3, 4, 5, and 7,[3] and informed Kahn that the benefit computations (item 8) would be furnished only upon receipt of authorizations from individual participants.
 
 
 17
 On October 1, 1987, now representing 74 of the plaintiffs, Kahn sent 71 authorization forms to Fruehauf, renewed the prior request for information not yet provided, rephrased his request for item 6 as a request for "actuarial reports and valuations," J.A. at 158 (emphasis added), and asked for one additional document--the operative plan document in effect prior to January 1, 1985 (item 11). On October 29, 1987, now on behalf of all 78 of the plaintiffs, Kahn sent Fruehauf the remaining seven authorization forms, and reminded Fruehauf of the outstanding document requests. On the same date, Fruehauf sent counsel 71 of the individual benefit computations.
 
 
 18
 In a telephone conversation on November 11, 1987, Fruehauf told Kahn that it would not furnish items 6, 9, 10, and 11. Kahn asked for benefit computation worksheets showing how the 78 individual benefit calculations were derived (item 12). On November 17, 1987, Fruehauf informed Kahn that the calculations were computer generated, and so no such worksheets existed. At the same time, Fruehauf sent the remaining seven benefit computations.
 
 
 19
 On April 29, 1988, Plaintiffs initiated the present suit. Plaintiffs sought, inter alia, to obtain severance benefits allegedly due under the Separation Plan, and to obtain a $100 per participant/per document/per day penalty pursuant to ERISA Sec. 502(c)(1), 29 U.S.C. Sec. 1132(c)(1), for Defendants' alleged failure to comply in a timely manner with Plaintiffs' information requests, in violation of the disclosure requirements of ERISA Sec. 104(b)(4), 29 U.S.C. Sec. 1024(b)(4).[4]
 
 
 20
 On March 12, 1990, the district court awarded summary judgment in favor of Defendant on the severance benefits issue. The court held that, under Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), it was obliged to defer to the Separation Plan administrator's decision to deny severance pay benefits unless this decision were arbitrary and capricious. In the present case, the administrator determined that no severance pay was due upon the sale of SPECO where the employees continued to work at the same jobs, under the same supervisors, in the same office, and even for the same employer--SPECO Corporation--as before. Because the court found that the administrator's determination was not arbitrary or capricious, the court rejected Plaintiffs' claim.
 
 
 21
 On February 10, 1993, based on a set of stipulated facts and oral argument, the court announced its findings of facts and conclusions of law pertaining to the disclosure issue. The court concluded that Defendants were required under ERISA to disclose, within 30 days of Plaintiffs' requests, items 1, 2, 4, 5, 7, 8, and 11, but Defendants were not obliged to disclose items 6, 9, 10, and 12. The court regarded item 3 as part of item 4. As for item 8, the court held that Defendants should have released the benefit computations to Kahn without waiting for written authorization from the participants.
 
 
 22
 The court found as a matter of fact that Defendants' failure to disclose was not the result of bad faith and, because the parties ultimately agreed that Plaintiffs' pension benefits were correctly calculated, did not result in any prejudice to Plaintiffs. However, the court found, as a matter of law, that bad faith and prejudice were not essential predicates for imposing statutory penalties for the failure to disclose; rather they were merely factors to consider in deciding what penalty to impose.
 
 
 23
 In light of the number of Plaintiffs that were affected by Defendants' failure to disclose, the court decided that an appropriate penalty would be $100 per day per document, not to be assessed per Plaintiff, but to be split among all Plaintiffs. Kahn requested items 1 through 10 on July 13, 1987, and Fruehauf provided items 1, 2, 4 (including 3), 5, and 7 on September 11, 1987, so these five documents were furnished 30 days late. Kahn requested item 11 on October 1, 1987, and it was provided on February 10, 1988, which was 102 days late. As for item 8, although Defendant erred in believing that authorization was needed, the court was unwilling to punish Defendant for purporting to protect the privacy of the participants, particularly in the absence of any prejudice to Plaintiffs and in light of the fact that Defendants had just furnished Plaintiffs with benefit calculations one month before Kahn made his request. The total statutory penalty, then, was $25,200. Both parties appealed.
 
 II.
 
 24
 Plaintiffs contend that the district court erred in holding that Defendants' failure to timely disclose the requested documents resulted in no prejudice to Plaintiffs. The parties disagree regarding what standard of review we should apply in considering this issue. The district court characterized its finding that Plaintiffs were not prejudiced by Defendants' delays in disclosing the required documents as a finding of fact. In their opening brief, Plaintiffs claimed that, because the case was in a summary judgment posture when the court found that Defendants' failure to disclose in a timely manner caused no prejudice to Plaintiffs, the appeals court should review this finding de novo.[5] However, this claim ignores the fact that the court made this finding pursuant to Rule 52 (pertaining to findings by the Court in a bench trial) rather than to Rule 56 (pertaining to summary judgment).
 
 
 25
 In their reply brief, Plaintiffs abandoned their erroneous "summary judgment" argument, and instead argued that the district court's finding of no prejudice was a conclusion of law, or at least, a mixed question of law and fact.[6] In support of this claim, they rely upon Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which held that, with regard to an ineffective assistance of counsel claim, finding of prejudice is a mixed question of law and fact.
 
 
 26
 We conclude, however, that Strickland is inapposite. Prejudice with regard to an ineffective assistance of counsel claim implies that, but for a defense counsel's lack of competence, a criminal defendant would not have been convicted or would not have been punished so severely. This involves an appraisal of the merits of the criminal defendant's case, which necessitates a legal analysis. On the other hand, a finding regarding prejudice in the context of the present case necessitates no legal analysis; it involves the purely factual finding of whether Plaintiffs are in a worse position because of Defendants' delays than they would have been if the required documents had been timely disclosed.
 
 
 27
 Because this issue involves nothing more than a challenge to a finding of fact by the lower court, we review only for clear error. Fed.R.Civ.P. 52(a); Anderson v. Bessemer City, 470 U.S. 564, 573-75, 105 S.Ct. 1504, 1511-12, 84 L.Ed.2d 518 (1985). A finding of fact will only be clearly erroneous when, although there may be evidence to support the finding, "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Anderson, 470 U.S. at 573, 105 S.Ct. at 1511. To the extent that the finding of fact at issue rests upon credibility determinations, Rule 52 requires even greater deference. Id. at 575, 105 S.Ct. at 1512. "[W]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Bueno v. Mattner, 829 F.2d 1380, 1384 (6th Cir.1987) (quoting Anderson, 470 U.S. at 574, 105 S.Ct. at 1511-12), cert. denied, 486 U.S. 1022, 108 S.Ct. 1994, 100 L.Ed.2d 226 (1988).
 
 
 28
 Plaintiffs maintain that they "suffered significant anxiety, frustration and economic loss as a result of Defendants' failure to provide documentation on a timely basis." Plaintiffs' Opening Br. at 16. The anxiety and frustration are attributed to Plaintiffs' apprehension that their rights to benefits may have been violated. While it turned out that these rights were not violated, Plaintiffs argue that, given the sale to Grabill and the large reversion of assets from the Plan to Kelsey-Hayes, the apprehension was reasonable. The economic loss is attributable to legal and professional costs allegedly occasioned by Defendants' delays.
 
 
 29
 However, there is no evidence in the record regarding Plaintiffs' frustration and anxiety. It follows that these allegations on appeal do not provide a basis upon which we can say that the district court's finding of "no prejudice" was clearly erroneous.[7] As for Plaintiffs' claims of economic loss, Plaintiffs may be entitled under ERISA to recover some or all of their attorneys' fees--this issue is not before us on appeal. If Plaintiffs disagree with the district court's resolution of this issue, it can be the subject of a separate appeal. Because Plaintiffs advance no other ground for their economic loss claim other than attorney fees, and because the attorney fees issue is not yet before us, there is no clear error here.[8]
 
 III.
 
 30
 Plaintiffs contend that the district court erred by failing to impose the statutory penalty for Defendants' failure to timely disclose requested documents on a per participant basis. ERISA Sec. 502(c)(1)(B), 29 U.S.C. Sec. 1132(c)(1)(B), provides that:
 
 
 31
 Any administrator ... who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.
 
 
 32
 Because the statute expressly grants a district court discretion in imposing penalties for an employer's failure to disclose, we review only for abuse of discretion. An abuse of discretion exists when the reviewing court is firmly convinced that a mistake has been made. In re Bendectin Litigation, 857 F.2d 290, 307 (6th Cir.1988), cert. denied, 488 U.S. 1006, 109 S.Ct. 788, 102 L.Ed.2d 779 (1989); Schrand v. Federal Pacific Elec. Co., 851 F.2d 152, 157 (6th Cir.1988).
 
 
 33
 Plaintiffs correctly point out that the purpose of the statute was to induce administrators to timely provide participants with requested plan documents, and to penalize failures to do so. From this premise, they argue that the district court's refusal to award the statutory penalty for each individual plaintiff violates both the spirit and the letter of the statute. In their view, the court's refusal implied that "plan participants are not to be viewed as separate individuals," and that "violating the ERISA rights of 78 participants is no more significant than violating the ERISA rights of one participant." Plaintiffs' Opening Br. at 22. They further contend that the district court's refusal penalized Plaintiffs for joining together.
 
 
 34
 We disagree. Many courts have refused to impose any penalty at all under Sec. 1132(c)(1)(B) in the absence of a showing of prejudice or bad faith. See, e.g., Rodriguez-Abreu v. Chase Manhattan Bank, N.A., 986 F.2d 580, 588-89 (1st Cir.1993); Godwin v. Sun Life Assurance Co. of Canada, 980 F.2d 323, 328-29 (5th Cir.1992). The court below made it very clear that, in light of Defendants' good faith and the lack of prejudice to Plaintiffs, it was imposing a penalty only because of the number of Plaintiffs that were involved. Thus, the lower court was expressly rewarding Plaintiffs for joining together.
 
 
 35
 Moreover, the result is no different than if the court had exercised its discretion to award $323 per plaintiff, or $1.28 per plaintiff/per document/per day, rather than $100 per document/per day to be split between all the plaintiffs. Given that the court below would have been acting within its discretion if it had imposed no penalty at all on Defendants, Plaintiffs cannot plausibly argue that $1.28 per document/per day is so small an amount that the penalty constitutes an abuse of discretion. In short, there is no abuse of discretion here.
 
 IV.
 
 36
 Plaintiffs contend that the court erred in holding that the statutory penalty does not apply for the first 30 days after Plaintiffs request documents. This constitutes a challenge to the district court's statutory construction, and so we review de novo. United States v. Brown, 915 F.2d 219, 223 (6th Cir.1990) ("A district court engages in statutory construction as a matter of law, and we review its conclusions de novo.").
 
 
 37
 Section 1132(c)(1)(B), quoted above, expressly provides that if the court imposes a penalty for a failure to disclose requested information within 30 days, it must calculate the penalty "from the date of such failure." This unambiguous language is dispositive of the instant issue.
 
 
 38
 Plaintiffs, however, claim that in Daniel v. Eaton Corp., 839 F.2d 263, 265 (6th Cir.), cert. denied, 488 U.S. 826, 109 S.Ct. 76, 102 L.Ed.2d 52 (1988), we held that award under Sec. 1132(c) is to be calculated from the date of the plaintiff's initial request for documents. A careful reading of Daniel shows that Plaintiffs are mistaken. While it is true that the Daniel district court arrived at a Sec. 1132(c) penalty by multiplying $25 times the number of days between the plaintiff's request and the defendant's response, this calculation was not raised as issue on appeal. 839 F.2d at 265, 268. Thus, we made no holding that supports Plaintiffs' contention.
 
 
 39
 Although the Daniel trial court's award appears to support Plaintiffs' contention, most of the district courts that have considered the question have held that Sec. 1132(c)(1) penalty calculations begin only 31 days after the plaintiffs made their document requests. See, e.g., Thomas v. Jeep-Eagle Corp., 746 F.Supp. 863, 864-65 (E.D.Wis.1990); Bova v. American Cyanamid Co., 662 F.Supp. 483, 490 (S.D.Ohio 1987). In light of the statute's unambiguous language, as well as the weight of authority, we reject Plaintiffs' argument.
 
 V.
 
 40
 ERISA Sec. 104(b)(4), 29 U.S.C. Sec. 1024(b)(4), provides in pertinent part that:
 
 
 41
 The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.
 
 
 42
 Plaintiffs maintain that the phrase, "other instruments under which the plan is established or operated," includes: (A) the latest actuarial valuation report (item 6); (B) pertinent portions of the purchase agreement with Grabill (item 10); and (C) the Calculation Procedure used to compute benefits (a variation on item 12).
 
 
 43
 Like the previous issue, the question before us is a matter of statutory construction that we review de novo.
 
 A. Actuarial Valuation Report (Item 6)
 
 44
 The district court reasoned that an administrator is not required to furnish actuarial valuation reports upon request because these reports are of a different class than the specific items listed in Sec. 104(b)(4); they are merely "backup documentation" of material contained in the annual reports. J.A. at 243. Plaintiffs counter that the actuarial valuation report is an instrument under which the plan is operated; it is, after all, a formal report required under ERISA Secs. 103(a)(4) and (d), 29 U.S.C. Secs. 1023(a)(4) and (d), and it is a primary source of information concerning a plan that is not available elsewhere.
 
 
 45
 Defendants cite to three Department of Labor ("DOL") Advisory Opinion letters, in which DOL instructs that various documents--trustee meeting minutes, treasurer's reports not part of a plan's annual report, and reports to state governments--do not necessarily have to be disclosed under Sec. 1024(b)(4). In these letters, the DOL stresses that if these minutes do in fact constitute an instrument under which the plan is established or operated, they have to be furnished. The letters contrast minutes of a meeting in which trustees review the performance of an investment manager, which would not have to be disclosed, and minutes of a meeting in which the trustees establish a claim procedure, which would have to be disclosed. See DOL Advisory Opinion Letters 87-010A, 82-021A, and 82-033A. However, because actuarial valuation reports are not the same as the documents that are mentioned in the DOL letters, we find the letters to be inapposite.
 
 
 46
 Surprisingly, whether actuarial reports must be disclosed upon request under Sec. 1024(b)(4) appears to be an issue of first impression at the appellate level.[9] We are persuaded by Plaintiffs' reasoning. Because an actuarial valuation report is required for every third plan year, Sec. 1023(d), these reports are indispensable to the operation of the plan. As such, they are "instruments under which the plan is ... operated," which must be disclosed upon request under the plain language of Sec. 1024(b)(4). Furthermore, as Plaintiffs point out, the purpose of ERISA's disclosure requirements is to ensure that "the individual participant knows exactly where he stands with respect to the plan." Firestone, 489 U.S. at 118, 109 S.Ct. at 958 (quoting H.R.Rep. No. 93-533, p. 11 (1973)). This suggests that, all other things being equal, courts should favor disclosure where it would help participants understand their rights.
 
 B. Purchase Agreement (Item 10)
 
 47
 The district court correctly held that the purchase agreement between Fruehauf and Grabill was not an instrument under which the Pension Plan was established or operated. The Plan terminated six months or so before the purchase agreement was entered into. Plaintiffs argue that because the purchase agreement specifies that sellers remain liable for all benefits accrued under the company's retirement plan, the agreement falls within the scope of Sec. 1024(b)(4). Defendants respond correctly that the plan referred to in this agreement is not even the particular Pension Plan at issue in this case, but is rather the pension plan that became effective on January 1, 1987. Plaintiffs' argument is without merit.
 
 
 48
 C. Calculation Procedure (a Variation of Item 12)
 
 
 49
 Plaintiffs originally asked for benefit computation worksheets. Defendants replied that worksheets were non-existent because benefit computations were all performed by computer. However, at that time, Defendants apparently had in their possessions a written "Calculation Procedure," a step-by-step detailed description of the procedures to be followed in order to derive a participant's benefits under the Plan. Plaintiffs allege that they only learned of the existence of this written Procedure on October 21, 1988, when it was produced during the discovery phase of this litigation. They argue that even though they never requested production of this document by name, Defendants should have furnished it in response to Plaintiffs' request for worksheets.
 
 
 50
 Defendants claim that Plaintiffs knew that Defendants possessed a computer program as early as November 17, 1987, yet Plaintiffs failed to request production of the program. Plaintiffs correctly respond, however, that the program, in computer language, is hardly the equivalent of computation worksheets, but the Calculation Procedure, written in ordinary (albeit technical) language is indeed equivalent to that which they expressly requested. Thus, Plaintiffs' decision not to ask for the computer program is irrelevant to the question of whether Defendants should have timely produced the Calculation Procedure.
 
 
 51
 Defendants offer no excuse for their failure to furnish the Procedure in response to Plaintiffs' request for item 12. Having reviewed the Procedure, we find that it so obviously contains the information that Plaintiffs expressly described when they requested "worksheets," that Defendants either knew or should have known that they were obliged to furnish it in response to Plaintiffs' request. Imposing a burden upon Plaintiffs to ask for the Calculation Procedure by name rather than by description would be contrary to the spirit of Sec. 1024(b)(4).
 
 VI.
 
 52
 Finally, Plaintiffs contend that the lower court erred by applying an "arbitrary and capricious" standard to the Separation Plan administrator's denial of benefits. In Firestone, 489 U.S. at 115, 109 S.Ct. at 956, the Court held that "a denial of benefits challenged under Sec. 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[10]
 
 
 53
 In Davis v. Kentucky Fin. Cos. Retirement Plan, 887 F.2d 689, 693-94 (6th Cir.1989), cert. denied, 495 U.S. 905, 110 S.Ct. 1924, 109 L.Ed.2d 288 (1990), we held that, under Firestone, where a plan grants discretion to an administrator, a court applies the "arbitrary or capricious" standard of review.
 
 
 54
 The arbitrary or capricious standard is the least demanding form of judicial review of administrative action. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious.
 
 
 55
 Id. at 693 (quoting Pokratz v. Jones Dairy Farm, 771 F.2d 206, 209 (7th Cir.1985)). We found that this deferential standard was properly applied where the plan stated that the administrator's determinations under the plan and interpretations of the plan "shall be final, conclusive and binding." Id. at 694.
 
 
 56
 Plaintiffs' claim for severance benefits is pursuant to Sec. 1132(a)(1)(B), so Firestone and Davis govern our determination of the standard of review. Section 10 of the Separation Plan states that "[d]ecisions of the Company with respect to the administration and interpretation of the Plan shall be final and shall be binding and conclusive upon all persons." J.A. at 205. As per Davis, it follows that the "arbitrary or capricious" standard applies.[11]
 
 
 57
 Plaintiffs also argue that the Plan allegedly violates ERISA Sec. 503, 29 U.S.C. Sec. 1133 by failing to provide for a dispute resolution procedure that participants can use.[12] From this premise, they conclude that a de novo standard of review applies. This argument is untenable. If the Plan is defective in the way alleged by Plaintiffs, Plaintiffs may have a separate cause of action or some other remedy. However, the remedy for such a defect is not that the district court changes its standard of review for the instant cause of action.
 
 VII.
 
 58
 In their cross-appeal, Defendants raise one additional issue. They argue that the district court erred in holding that Defendants were required to disclose pertinent Plan documents without first receiving signed authorizations from the Plan participants. The challenged holding was a conclusion of law, which we review de novo. See, e.g., Waxman v. Luna, 881 F.2d 237, 240 (6th Cir.1989) ("Conclusions of law are ... subject to de novo review").
 
 
 59
 Section 1024(b)(4) only requires a plan administrator to disclose pertinent documents "upon written request of any participant or beneficiary." The statute does not expressly require disclosure to anyone else. However, according to the DOL:
 
 
 60
 [I]f information is required to be furnished to a participant or beneficiary under section 104(b)(4) [29 U.S.C. Sec. 1024(b)(4) ], the information must also be furnished to a third party where the participant or beneficiary has authorized in writing the release of the information to such third party. Absent such authorization, it is the Department's view that a plan is not required by section 104 of ERISA to provide such information to persons who are neither participants nor beneficiaries.
 
 
 61
 DOL Advisory Opinion Letter 82-021A, at 3.
 
 
 62
 Plaintiffs stress that this DOL Advisory Opinion Letter involved a request for documents by a non-attorney third party. They correctly cite to a long history of authority recognizing that attorneys generally have the authority to act on their clients' behalf without written authorization. See, e.g., Hill v. Mendenhall, 88 U.S. (21 Wall.) 453, 454, 22 L.Ed. 616 (1875) ("When an attorney of a court of record appears in an action for one of the parties, his authority, in the absence of any proof to the contrary, will be presumed."); Graves v. United States Coast Guard, 692 F.2d 71, 74 (9th Cir.1982) (referring to "the body of case law holding that the appearance of an attorney for a party raises a presumption that the attorney has the authority to act on that party's behalf."). Specifically with regard to disclosure of documents under Sec. 1024(b)(4), at least two district courts have held that "[a]n attorney may request information on the behalf of a client who is a plan participant." Curry v. Contract Fabricators, Inc. Profit Sharing Plan, 744 F.Supp. 1061, 1066 (M.D.Ala.1988) (citing Porcellini v. Strassheim Printing Co., Inc., 578 F.Supp. 605, 611 (E.D.Pa.1983)), aff'd, 891 F.2d 842 (11th Cir.1990).
 
 
 63
 While we acknowledge the force of Plaintiffs' argument, we must keep in mind that, in interpreting Sec. 1024(b)(4), we are obliged to accord great deference to DOL interpretations. Blessitt v. Retirement Plan for Employees of Dixie Engine Co., 848 F.2d 1164, 1167 (11th Cir.1988); see also Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984) ("[A] court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency."). The plain language of the DOL Advisory Opinion Letter refers broadly to all "persons who are neither participants nor beneficiaries"; it does not exempt attorneys. We can find no compelling indication that the DOL's Advisory Opinion is incorrect. In a matter of statutory interpretation such as this, our traditional recognition of attorneys' authority to represent their clients must yield to the DOL's interpretation of Sec. 1024(b)(4).
 
 
 64
 Following the DOL's guidance, then, we hold that Defendants were not obliged to disclose any documents to Plaintiffs' attorney without written authorization from Plaintiffs or their beneficiaries. The court below erred to hold otherwise.
 
 VIII.
 
 65
 For the foregoing reasons, we affirm that: (1) Plaintiffs were not prejudiced by Defendants' failure to timely disclose requested documents; (2) it was not an abuse of discretion for the court below to impose penalties under Sec. 1132(c)(1)(B) as a whole rather than per participant; (3) penalty calculations under Sec. 1132(c)(1)(B) start only 30 days after Plaintiffs' request; (4) Defendants were not obliged to disclose their purchase agreement with Grabill under Sec. 1024(b)(4); and (5) the "arbitrary or capricious" standard of review was the appropriate standard to apply in reviewing the administrator's determination that Plaintiffs were not entitled to severance benefits upon the sale of SPECO. We reverse the district court's holdings that: (1) Defendants were not obliged to disclose their latest actuarial report and their Calculation Procedure for the Plan; and (2) Defendants were required to furnish the pertinent documents upon the request of Plaintiffs' attorney without first receiving signed authorizations from the Plan participants. We remand this matter in order for the district court to recalculate what penalty to impose on Defendants in light of this opinion.
 
 
 
 *
 The Honorable Horace W. Gilmore, Senior United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The trustee of the trust by which the Pension Plan was funded was also named as a defendant, but it was subsequently voluntarily dismissed by Plaintiffs
 
 
 [2]
 The actual reversion eventually turned out to be $38,473,220.84, which reverted to Fruehauf in February 1988
 
 
 [3]
 The parties disagree about whether item 3 was actually provided. The district court agreed with Defendants that item 3 was included as part of item 4
 
 
 [4]
 Plaintiffs filed a six count amended complaint on May 16, 1988. The six counts asked the court: (1) to clarify Plaintiffs' benefit rights; (2) to impose a $100 per participant/per document/per day penalty on the Committee for its failure to comply with Plaintiffs' information requests, and to order the disclosure of information Plaintiffs had requested but had not yet received; (3) to order the payment of benefits due under the Pension Plan; (4) to enjoin Defendants from breaching their fiduciary duties under ERISA; (5) to order the payment of severance benefits due under the Separation Plan; and (6) to obtain attorneys' fees and costs attributable to Defendants' ERISA violations. Of these six counts, only counts II and V are relevant to the present appeal. After engaging in discovery, Plaintiffs acknowledged that they had received enough information to know that their pension benefits had been properly computed, and so the first count became moot. Plaintiffs do not contest the district court's grant of summary judgment in favor of Defendants on counts III and IV. The district court's resolution of count VI is not part of the record on appeal
 
 
 [5]
 Plaintiffs' Opening Br. at 15
 
 
 [6]
 Plaintiffs' Reply Br. at 4-5
 
 
 [7]
 Plaintiffs cite to an affidavit as proof of "frustration and anxiety." Plaintiffs' Reply Br. at 7. However, the affidavit only mentions that paying for legal counsel has been a "financial burden," which supports Plaintiffs' claim of economic loss, but not of frustration and anxiety
 
 
 [8]
 Additionally, Plaintiffs accuse Defendants of bad faith, characterizing them as having "engaged in a program of delay and deceit," Plaintiffs' Opening Br. at 18, and of "indifference and complete arrogance." Plaintiffs' Reply Br. at 12. The record offers no support for these claims
 
 
 [9]
 At the district court level, the only published opinion that addresses the issue of whether ERISA's disclosure requirement extends to actuarial reports is Aliff v. BP America, Inc., 826 F.Supp. 178, 188 (S.D.W.Va.1993). It is not clear from the written opinion whether or not the court's holding extends to actuarial valuation reports. In any event, we do not find the Aliff court's treatment of the issue persuasive, for it simply declared that actuarial reports fall outside the reach of Sec. 1024(b)(4), without offering any reasoning or argument in support of its view
 
 
 [10]
 Section 1132(a) provides in pertinent part that:
 A civil action may be brought--
 (1) by a participant or beneficiary--
 ...
 (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan....
 
 
 [11]
 Although the issue on appeal was limited to the lower court's holding regarding standard of review, it is worth noting that the administrator's denial of benefits was entirely reasonable. The sale of SPECO was not a termination, and all of the Plan participants continued to work after the sale in the same jobs, with the same supervisors, for the same corporation
 
 
 [12]
 This section provides, inter alia, that a benefit plan must afford participants a reasonable opportunity for full and fair review of a denial of a claim