104 F.3d 361
 Pens. Plan Guide P 23932N
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Deborah LAMPKINS, Plaintiff-Appellee,
v.
Robert H. GOLDEN, Defendant-Appellant.
 No. 95-2001.
 United States Court of Appeals, Sixth Circuit.
 Dec. 17, 1996.
 
 Before: SILER, MOORE and COLE, Circuit Judges.
 COLE, Circuit Judge.
 
 
 1
 Defendant-Appellant Robert H. Golden appeals the district court's grant of summary judgment imposing a penalty against him pursuant to 29 U.S.C. § 1132(c)(1)(B) for failure to furnish requested retirement plan information to a former employee, Plaintiff-Appellee Deborah Lampkins. For the reasons that follow, we AFFIRM the decision of the district court.
 
 I.
 
 2
 Deborah Lampkins ("Lampkins") was employed as a secretary in the law firm of Robert H. Golden, P.C. from 1980 to 1992. During this period, the law firm sponsored both a pension plan and profit-sharing plan for employees. While employed there, Lampkins participated in the Robert H. Golden Pension Trust ("Pension Plan")[1] and the Robert H. Golden Profit Sharing Trust ("Profit Sharing Plan").[2] Robert Golden ("Golden"), who is the sole shareholder and president of the law firm, serves as the sole administrator and trustee of both plans. He is also the only other participant in the plans.
 
 
 3
 Approximately three months after Lampkins ended her employment with the law firm, Golden furnished Lampkins a statement disclosing that her vested accrued benefit in the Pension Plan amounted to $4,455.33.[3] In addition to this statement, Golden notified Lampkins in writing that she had thirty days to submit a written request for the withdrawal of the money in the Pension Plan. Responding to Golden's letter, Lampkins advised Golden by letter dated July 1, 1992 that she was not willing to request distribution of these monies absent an opportunity to review the Pension Plan and the Profit Sharing Plan in their entirety. Believing that her vested accrued benefit in the Pension Plan amounted to more than $4,455.33, Lampkins requested copies of "the original Pension Plan documents, and any other documents, including the Adoption Agreement ..." and "... the same sort of documents for the Profit Sharing Plan."
 
 
 4
 Golden responded by providing Lampkins with three plan-related documents, including a 1987 Pension Plan Adoption Agreement ("the 1987 Adoption Agreement"). Golden, however, did not provide Lampkins with a copy of the Pension Plan Adoption Agreement in effect from January 18, 1978 through April 30, 1987 ("the 1978 Adoption Agreement"). Because the 1978 Adoption Agreement contained a different employer contribution formula from that set forth in the 1987 Adoption Agreement, Lampkins was unable to calculate accurately the amount of her vested accrued benefit in the Pension Plan without copies of both agreements.[4] Lampkins thereupon retained counsel, who made additional requests of Golden for copies of the 1978 Adoption Agreement. After a series of letters between Golden and Lampkins's counsel, Golden informed Lampkins on December 3, 1992 that the 1978 Adoption Agreement could not be found.
 
 
 5
 On March 25, 1993, Lampkins filed suit in the United States District Court for the Eastern District of Michigan, seeking a judgment determining her accrued benefits in the Pension and Profit Sharing Plans and ordering Golden to distribute those benefits as she designated.[5] During discovery, Lampkins formally requested production of the 1978 Adoption Agreement. However, Golden failed to produce the document until after Lampkins filed a motion to compel its production. Lampkins then moved for summary judgment and requested, in addition to her Pension Plan and Profit Sharing Plan benefits, that the court assess a penalty against Golden for his failure to furnish the pension and profit-sharing information.
 
 
 6
 The district court granted summary judgment and ordered Golden to pay Lampkins accrued benefits in the amount of $1,371.33 from the Profit Sharing Plan and $10,817.50 from the Pension Plan. Additionally, the district court assessed a penalty against Golden for his delay in producing the 1978 Adoption Agreement. As the administrator of the Pension and Profit Sharing Plans, Golden was statutorily required to produce such a plan document within thirty days of any plan participant's written request. Because Lampkins originally requested the 1978 Adoption Agreement in a letter on July 1, 1992, Golden was obligated to provide Lampkins with the document by July 31, 1992 or pay a potential penalty of $100 per day for each day beyond the thirty-day period that he delayed producing it. In the present case, Golden delayed producing the 1978 Adoption Agreement until October 12, 1993, more than fifteen months after Lampkins had requested the document and more than fourteen months after the thirty-day statutory period for producing it had expired. Accordingly, the district court ordered Golden to pay Lampkins $32,850, a penalty of $75 per day for each of the 438 days from August 1, 1992 through October 12, 1993 that Golden failed or refused to furnish the subject document.
 
 
 7
 Golden timely appealed the decision of the district court, challenging only the district court's imposition of a fine against him.
 
 II.
 
 8
 Although this case was decided on Lampkins's motion for summary judgment, and such motions are typically reviewed de novo, a district court's assessment of penalties under 29 U.S.C. § 1132(c) is reviewed solely for an abuse of discretion. See 29 U.S.C. § 1132(c)(1)(B); Bartling v. Fruehauf Corp., 29 F.3d 1062, 1068 (6th Cir.1994). "An abuse of discretion exists when the reviewing court is firmly convinced that a mistake has been made." Id. (citing In re Bendectin Litigation, 857 F.2d 290, 307 (6th Cir.1988), cert. denied, 488 U.S. 1006 (1989); Schrand v. Federal Pacific Elec. Co., 851 F.2d 152, 157 (6th Cir.1988)).
 
 III.
 
 9
 Title 29, section 1024(b)(4), imposes specific duties upon a pension plan administrator to furnish information to a plan participant. Specifically, under § 1024(b)(4), a pension plan administrator shall
 
 
 10
 ... upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.
 
 
 11
 Once a pension plan participant makes a request for any such documents, the plan administrator is obligated to produce the requested documents within thirty days. 29 U.S.C. § 1132(c)(1)(B). If the plan administrator fails to provide such documents within a thirty-day period, that administrator may be held personally liable to the plan participant for an amount up to $100 per day from the date of his failure or refusal to produce the documents. See id.
 
 
 12
 We cannot find that the district court abused its discretion in imposing a $75 per day penalty against Golden for failing to timely provide Lampkins with the 1978 Adoption Agreement. The 1978 Adoption Agreement is an instrument under which the Pension Plan was operated from 1978 to 1987. See 29 U.S.C. § 1024(b)(4). As the Pension Plan's administrator, Golden was required to produce this document within thirty days of Lampkins's written request. It is undisputed that Golden furnished the 1978 Adoption Agreement 438 days after the statute required him to do so.
 
 
 13
 Golden argues that the district court abused its discretionary authority because it assessed a penalty without finding that his delay caused Lampkins any prejudice. In support of this argument, Golden notes that some district courts have declined to impose a penalty unless the participant can show that the administrator's failure to deliver the documents within thirty days adversely affected the participant's rights in some fashion. See, e.g., Wesley v. Monsanto Co., 554 F.Supp. 93 (E.D.Mo.1982), aff'd, 710 F.2d 490 (8th Cir.1983); Pollock v. Castrovinci, 476 F.Supp. 606 (S.D.N.Y.1979), aff'd, 622 F.2d 575 (2d Cir.1980). The statute, however, does not require a finding of prejudice, and "[t]he circuits are in general accord that neither prejudice nor injury are prerequisites to recovery under the penalty provisions of the statute." Moothart v. Bell, 21 F.3d 1499, 1506 (10th Cir.1994) (citing Sage v. Automation, Inc. Pension Plan & Trust, 845 F.2d 885, 894 n. 4 (10th Cir.1988); see Faircloth v. Lundy Packing Co., 91 F.3d 648, 659 (4th Cir.1996) (noting that "prejudice to the party requesting the documents is not a prerequisite to the imposition of penalties...."); Gillis v. Hoechst Celanese Corp., 4 F.3d 1137, 1148 (3d Cir.1993), cert. denied, 114 S.Ct. 1369 (1994); Daughtrey v. Honeywell, Inc., 3 F.3d 1488, 1494 (11th Cir.1993); Rodriguez-Abreu v. Chase Manhattan Bank, N.A., 986 F.2d 580, 588 (1st Cir.1993)); see, e.g., Bartling v. Fruehauf Corp., 29 F.3d 1062 (6th Cir.1994). In fact, prejudice to the party requesting the documents is merely one factor that a district court may consider in imposing a penalty. See Faircloth, 91 F.3d at 659; Moothart, 21 F.3d at 1506; see, e.g., Bartling, 29 F.3d at 1068-69 (affirming a statutory penalty where, despite the lack of bad faith or prejudice, the district court had imposed the penalty "only because of the [large] number of Plaintiffs that were involved."); see also Daniel v. Eaton Corp., 839 F.2d 263, 268 (6th Cir.1988) (affirming an assessment of penalties against a plan administrator even though there was no evidence that the delay was deliberate or that any prejudice had resulted), cert. denied, 488 U.S. 826 (1988).
 
 
 14
 Furthermore, the district court's decision to impose the statutory penalty without a finding of prejudice comports with the general intent of the statute. The purpose of the statutory penalty is not to compensate participants, but to induce administrators to expeditiously provide requested plan documents by punishing those who fail to comply. See Faircloth, 91 F.3d at 659; Bartling, 29 F.3d at 1068; Daughtrey, 3 F.3d at 1494 (noting that the purpose of the statutory penalties is to punish because the penalty range of up to $100 per day is unrelated to any injury suffered by a plan participant). Thus, the district court acted well within its discretion in imposing a penalty without first requiring a showing of prejudice.
 
 
 15
 Golden also contends that the district court abused its discretion by not taking testimony or stating the criteria it used in determining the amount of the fine. Although the statute does not require a district court to justify its selection of a specific penalty, the district court clearly articulated its reasons for imposing a penalty. It noted, in unequivocal terms, that Golden's excessive delay in producing the pension plan document and his "deliberate indifference to his responsibilities as Administrator" served as a basis for the penalty. The district court also explicitly stated that a penalty of $75 per day was imposed "[b]ecause the Defendant acted with total disregard to his duties...." Because the statute does not require a district court to take testimony or make any particular findings before assessing a penalty, and because the court articulated its reasons for imposing the penalty, the district court did not abuse its discretion in determining the amount of Golden's fine.
 
 
 16
 Finally, Golden asserts that the district court was prejudiced by an "overwhelming[ly] unfavorable attitude" towards him. He cites two bases for this assertion. First, Golden claims that the district court's finding of "deliberate indifference" in the face of his stated inability to locate the requested pension plan document is evidence of prejudice. Golden's protestations aside, the district court had sufficient evidence before it to conclude that Golden produced the 1978 Adoption Agreement only when compelled to do so as a part of this litigation. The district court's finding that Golden acted with deliberate indifference is therefore sufficiently supported by the record and is not merely the result of some "unfavorable attitude." See Boyer v. Douglas Components Corp., 986 F.2d 999, 1003 (6th Cir.1993) (noting that this court must accept the factual findings of a district court unless they are clearly erroneous). Second, Golden argues that when imposing its fine, the district court was prejudiced against him by an erroneous belief that he had made illegal loans of pension plan assets. Even if the district court incorrectly believed that Golden's investment of pension plan assets violated ERISA, Golden has failed to show that the district court assessed its penalty even partially on this basis. There is simply nothing in the record to support the notion that the district court considered Golden's purported loans, or was prejudiced by the allegations of improper loans, in assessing its penalty.
 
 IV.
 
 17
 Considering the broad discretion granted to district courts by 29 U.S.C. § 1132(c)(1)(B) to assess penalties, and the clear evidence of indifference and obstruction by Golden, we cannot find that the district court abused its discretion. Accordingly, the district court's grant of summary judgment is AFFIRMED.
 
 
 
 [1]
 The parties agree that the Pension Plan is governed by the Employee Retirement Income Security Act ("ERISA"), codified at 29 U.S.C. § 1001 et seq
 
 
 [2]
 In its September 30, 1994 order, the district court noted that Golden could be held liable under 29 U.S.C. § 1132(c)(1)(B) for failing to comply with Lampkins's request for both Pension and Profit Sharing Plan documents. However, the district court ultimately imposed the statutory penalty on the basis that Golden failed to surrender a 1978 Pension Plan Adoption Agreement. Because the statutory penalty was imposed solely on the basis of Golden's failure to produce a pension plan agreement our analysis centers on the Pension Plan, and we do not discuss further Golden's failure to surrender various Profit Sharing Plan documents
 
 
 [3]
 Golden initially refused to provide Lampkins with a statement of her vested accrued benefit in the Profit Sharing Plan by stating that her profit sharing account was "tied up in a long term investment." After three written requests by Lampkins and her attorney, the institution of this suit, and numerous discovery requests, Golden admitted in his November 1993 affidavit that Lampkins's account balance in the Profit Sharing Plan was $761.81 in 1984 and that "her interest today would be the same $761.81, plus accumulated interest." Finally, in March 1995, almost three years after Lampkins's initial written request, Golden provided Lampkins with a statement that showed her accrued benefit in the Profit Sharing Plan was $1371.33. As for the Pension Plan, Golden subsequently conceded that Lampkins's accrued vested interest totaled $10,817.50
 
 
 [4]
 In order to calculate accurately her vested accrued benefit in the Pension Plan, Lampkins needed to determine the value of the contributions made to the Plan by Robert H. Golden, P.C. For each year that Lampkins worked at Robert H. Golden, P.C., the law firm would contribute an amount to the Pension Plan on her behalf that was equal to a certain percentage of her salary. In 1978, a Pension Plan Adoption Agreement was executed that established the employer contribution formula as 4.6% of the employee's compensation up to $14,100, plus 11.6% of compensation in excess of $14,100. This 1978 Adoption Agreement formula governed the law firm's contributions to the Pension Plan from the start of Lampkins's employment in 1980 through April 30, 1987
 In 1987, a new Pension Plan Adoption Agreement was executed that established the employer contribution formula as 5.7% of the employee's total compensation, plus an additional 7% of all compensation in excess of $50,000. This 1987 Adoption Agreement formula governed the calculation of the law firm's contributions to the Pension Plan from May 1, 1987 until Lampkins quit her job at Robert H. Golden, P.C. in March 1992.
 
 
 [5]
 Although Golden filed a counterclaim against Lampkins on April 14, 1993, the district court awarded Lampkins summary judgment on the counterclaim on September 30, 1994; and that claim is not presented to us for review