Judy A. GATLIN, Plaintiff–Appellee,

v.

NATIONAL HEALTHCARE CORPORATION, Defendants– Appellants,

Grady Gatlin;  Bank of Belfast,
Third Party Defendants.

No.  99–6626.

United States Court of Appeals,
Sixth Circuit.

March 2, 2001.

Before MERRITT and COLE, Circuit Judges; and HOOD, District Judge.*

MERRITT, Circuit Judge.

This case stems from the fact that defendant National Healthcare Corporation

* The Hon. Joseph M. Hood, U.S. District Judge for the Eastern District of Kentucky, sitting by designation.

("NHC" or "the company") mailed plaintiff Judy Gatlin's retirement benefits payment to the wrong address. The recipient of the check, the plaintiff's estranged husband, fraudulently endorsed and cashed the check, actions for which he was later convicted on criminal fraud charges. The plaintiff's subsequent request that NHC issue her a second check was refused. In addition, NHC was extremely slow in responding to the plaintiff's request for documents telling her how to appeal the company's decision not to issue a second payment. When the plaintiff sued NHC, NHC filed a third-party complaint against the plaintiff's estranged husband, Grady Gatlin,[1] and the financial institution that cashed the check, Bank of Belfast.

The district court found in favor of Gatlin and also awarded her fines stemming from NHC's refusal to produce the requested documents. In addition to the monetary judgment, the district court held that NHC was liable for the plaintiff's attorney's fees. Finally, the district court declined to exercise supplemental jurisdiction over the defendant's third-party complaints against Grady Gatlin and the Bank of Belfast. We affirm all of the district court's decisions, with the exception of the amount of the statutory penalty for failure to produce, which we reverse and reduce.

## I. Facts

Judy Gatlin was employed by NHC for just over seven years, at which point she elected to take early retirement. During her tenure at NHC, Gatlin participated in the Employee Stock Ownership Plan ("ESOP"), the company's retirement plan. When she retired, her vested pension balance totaled $11,393.59. In order to receive her benefits, Gatlin filed a distribution application form. The company's form letter accompanying the application informed her that "the check for your vested account will be made payable to you as a former plan participant and mailed to your home address that you provide on the application." The letter also notified recipients that "[a]ll three pages of the Application for Benefits must be completed, signed and dated for a distribution to be made." In April, 1997, Gatlin filled out the form and mailed it to NHC, specifying an address in Florence, Alabama. She neglected to sign her application, however, and NHC returned it to the address in Florence with instructions to complete the signature portion. Gatlin then returned the fully completed form, maintaining the Florence, Alabama, address for payment.

On May 19, 1997, NHC received a telephone call requesting that Gatlin's address be changed to an address in Lewisburg, Tennessee. NHC documents do not indicate the identity of the caller, but the change was made in accordance with the telephone request. NHC subsequently mailed Gatlin's benefits check to the Lewisburg address using certified mail. The letter was accepted at that address by Grady Gatlin, the plaintiff's estranged husband, who informed the mail carrier that he was married to the intended recipient and therefore authorized to sign for the package. He then forged an endorsement of the check and cashed it at the Bank of Belfast.

In July, Judy Gatlin contacted NHC to inform the company that she had yet to receive her benefits check. NHC responded that the check had been mailed and subsequently cashed. When the company refused to issue a second check, Gatlin orally requested that NHC send her a copy of the plan and any other documents that could assist her in an appeal of the

---

1. For the purposes of this opinion, Judy Gatlin will be referred to as "Gatlin" or "Judy Gatlin." Grady Gatlin will always be referred to by his full name.

decision not to issue a second payment. The company never sent any documents and in October Gatlin made a formal written request for another benefits check and the plan documents. NHC refused the written request for payment' and instead directed Gatlin to proceed against the Bank of Belfast. In addition, NHC took no action with regard to the request for documents. In February, 1998, Gatlin sent a second written request for payment and for the documents. NHC denied the request for payment, but did send Gatlin a copy of the ESOP and summary plan description.

Having engaged counsel, Gatlin requested an appeal of her denial of benefits, but NHC denied her request for an appeal. She then brought suit in federal court seeking payment of benefits, a monetary penalty for withholding documents, and attorneys' fees. As part of its response, NHC filed a third-party complaint against Grady Gatlin and the Bank of Belfast.

In keeping with this court's decision in *Wilkins v. Baptist Healthcare System*, 150 F.3d 609 (6th Cir.1998), the district court held neither a summary judgment proceeding nor a trial on the merits. Instead, it considered the parties' filings and rendered its decision based on the administrative record. The district court began by finding that it was required to review the plan administrators' decisions using the "arbitrary and capricious" standard. In spite of that deferential standard, the court found that NHC was required to send Gatlin a second benefits check for the full $11,393.59. The court further found that because NHC delayed in sending Gatlin documents from the plan, it was subject to a $100 per day penalty, resulting in a $15,100 award to the plaintiff (based on 151 days of non-compliance). In addition, the court awarded the plaintiff "reasonable attorney fees." The court's final decision was to decline supplemental jurisdiction over the defendant's third-party complaints against both Grady Gatlin and Bank of Belfast. NHC appeals all of these decisions, and, with respect to the penalty for delay in sending ESOP documents to Gatlin, argues in the alternative that the penalty, even if properly imposed, was incorrectly calculated.

## II. Analysis

1: The standard of review for the district court's examination of the denial of benefits.

■ The first question for this court is whether the district court was correct in utilizing the "arbitrary and capricious" standard to review NHC's decision not to send Gatlin a second check. Based on the language of the plan, which grants broad discretion to the administrators, the district court correctly interpreted both U.S. Supreme Court precedent. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), and Sixth Circuit case law, *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir.1996), in reaching its conclusion concerning the method of review.

The plan grants the board of directors a great deal of discretion in determining how the plan should be administered. Most importantly, the plan provides that the board may appoint a committee to "make all determinations as to the right of any person to a benefit." This language fits within the Supreme Court's direction that plans giving the administrators "discretionary authority to determine eligibility for benefits or to construe the terms of the plan" shall be reviewed using the arbitrary and capricious standard of review. *Firestone*, 489 U.S. at 115, 109 S.Ct. 948. As a result, the district court was correct in using this highly deferential standard.

2: The standard of review for this court's examination of the district court's decisions.

■ The question of whether NHC behaved in an arbitrary and capricious manner is a mixed question of law and fact in that it involves a determination of how the administrators actually behaved and the application of the arbitrary and capricious standard to that factual determination. As a result, this court must review the district court's decision *de novo*. *Paul Revere Life Ins. Co. v. Brock*, 28 F.3d 551, 553 (6th Cir.1994).

The decisions to assess a penalty against NHC for non-production of the requested documents and to award attorneys' fees are both reviewed under an abuse of discretion standard, however. *See Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1068 (6th Cir.1994) (prescribing standard of review for penalty awards); *Shelby County Health Care Corp. v. Council of Industrial Workers Health and Welfare Trust Fund*, 203 F.3d 926 (6th Cir.2000) (applying abuse of discretion standard for review of attorneys' fee awards). Similarly, the district court's decision not to exercise supplemental jurisdiction over state law claims is subject to an abuse of discretion standard of review. *Soliday v. Miami County*, 55 F.3d 1158, 1164 (6th Cir.1995).

3: Application of the Arbitrary and Capricious Standard to NHC's Actions

■ While the arbitrary and capricious standard is a heavy burden for the plaintiff to meet, we agree with the district court that Gatlin has made the required showing to prevail on her claim. The fact that NHC violated its own policy and refused to provide the plaintiff with any remedy for a turn of events that was entirely NHC's own fault indicates that the company behaved capriciously, thereby satisfying the applicable legal standard.

NHC argues that allowing change of addresses over the phone is hardly an unreasonable policy, let alone arbitrary and capricious. The problem with this argument is that NHC placed a premium on forcing benefit recipients to submit their information in writing. This can be seen both as a general policy matter, based on the form letter to Gatlin informing her that "[a]ll three pages of the Application for Benefits must be completed, signed and dated for a distribution to be made," as well as in Gatlin's specific case, as shown by the fact that NHC returned her original application for failure to complete the signature block. In addition, NHC did not respond to the charge in the plaintiff's complaint contending that permitting a change of the beneficiary's address by phone was a violation of company policy.[2] Fed.R.Civ.P. 8(d) directs that this non-response should therefore be considered an admission of the allegations in the complaint. In addition, the company's own record of this incident contains only a hand-written notation on the address page that the permanent address was changed on "5–19–97 per telephone." Given that there is so little information in the company's records, NHC is hardly in a position to refute Gatlin's claim that she did not make the phone call; as a result, all indications are that the company permitted someone other than the beneficiary to alter the destination to which a valuable benefits check would be sent. Viewed in this light, Gatlin's non-receipt of her retirement benefits was the result of both

---

**2.** Paragraph 29 of the complaint reads: "The defendants' [sic] actions in changing the plaintiff's address based on a verbal telephone call was in disregard for defendant's own requirements under the plan that the request for benefits be made in writing, including the home address where the benefits are to be sent." NHC's answer contains no response to this paragraph.

the company's violation of its own policy and an objectively unreasonable decision to allow someone other than the beneficiary to change the address to which the benefits check would be sent. Consequently, the company's rigid position that Gatlin must bear the cost of NHC's mistake can be classified as arbitrary, capricious and in bad faith. The district court was therefore correct in requiring the company to issue a second benefits check.

4: The district court's imposition and calculation of the monetary penalty for failing to send the plan documents.

■ ERISA provides that retirement plan documents must be provided to beneficiaries on their request. *See* 29 U.S.C. § 1024(b)(4) (1994). In addition, the statute sets forth penalties for non-compliance: administrators who fail to respond to requests for documents "may be personally liable ... in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper." 29 U.S.C. § 1132(c)(1). In this instance, NHC sent the plan documents 151 days after they were originally requested. In response, the district court assessed a penalty of $15,100 (or $100 per day).

■ NHC now challenges this award as having been improperly applied and, in the alternative, improperly calculated. The improper application claim is based on NHC's argument that Gatlin suffered no harm from the company's failure to send the documents. The company also argues that their failure to send documents was based on a good-faith belief that the documents were irrelevant to Gatlin's legal position. Both of these arguments are unavailing, largely because the language of ERISA indicates that prejudice and the company's good-faith beliefs are not relevant to the company's duty to disclose the plan's terms to the employee. The language of § 1124(b) (mandating full disclosure of the plan's provisions, both as a matter of course and on specific employee request) simply requires employers to furnish their employees with copies of the benefits plans during set intervals and on specific request. No exceptions are made for when the employer decides that the employee does not need the forms. In fact, the implication of the blanket disclosure requirement is that the decision as to whether the forms are relevant should be made by the employee, not the employer. As a result, the employer's own thoughts about the legal theories available to the employee have no impact on the duty to disclose the plan's contents. On the other hand, prejudice to the beneficiary is a logical concern for in deciding whether to impose the penalty in the first place, *Bartling v. Fruehauf,* 29 F.3d 1062, 1068–69 (6th Cir.1994), and in this case the district court specifically found that the plaintiff did suffer prejudice as a result of the company's failure to produce the requested documents. Specifically, the court found that the company's refusal to send the plan particulars hindered the plaintiff's ability to appeal the decision at the earliest opportunity. The district court was therefore well within its discretion in deciding to invoke the ERISA penalty provision, especially in light of its factual finding that the plaintiff suffered actual prejudice from the failure. As a result, this decision is affirmed.

■ The defendant's stronger argument is with respect to the calculation of the fine. ERISA states that parties who fail to supply "the material requested ... within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court in its discretion may order such other relief

as it deems proper." 29 U.S.C. § 1132(c)(1). In this case, the court calculated the penalty from the date of the plaintiff's written request for documents (November 1, 1997) through the date of actual compliance (April 1, 1998). The defendant argues that the penalty period should not begin until 30 days following the request, meaning that it would only be liable for 121 days of non-compliance. The problem in this case is deciding when the company's actual "failure or refusal" took place. The district court clearly sets the date of the refusal as the date of the company's receipt of the plaintiff's request for documents. NHC argues that this application of the ERISA penalty guidelines is incompatible with this court's decision in *Bartling*, 29 F.3d at 1069, which rejected the plaintiffs' claim that the penalty period should begin from the date of failure and not 31 days after the request was submitted. Though the *Bartling* court did not explicitly hold that the penalty period can never begin before 31 days, the district court's calculation of the penalty using November 1, 1997, as a start date is implicitly contrary to *Bartling*. As a result, we reverse the district court's calculation and assess a penalty of $12.100.

## 5: Attorneys' Fees

■ In its order resolving this case, the district court awarded the relief described above, but then went on to include "reasonable attorney fees." The decision to award attorneys' fees is reviewed for an abuse of discretion, *Shelby County Healthcare Corp. v. Council of Indus. Workers Health and Welfare Trust Fund*, 203 F.3d 926 (6th Cir.2000), and we find that there is a reasonable basis underlying the district court's decision to add this to the relief granted the plaintiff.

■ In considering whether to award attorneys' fees, the district court is directed to consider the following factors:

(1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA and (5) the relative merits of the parties' positions. *Foltice v. Guardsman Products, Inc.*, 98 F.3d 933, 936–37 (6th Cir.1996).

This case satisfies all of the *Foltice* criteria except number (4) (common benefit). Specifically, the district court necessarily made a finding that NHC acted arbitrarily and capriciously in order to find the defendants liable in the first place. As a result, numbers (1) (degree of culpability) and (5) (relative merits of the parties' positions) are fulfilled. The deterrent effect of the award (number (3)) is obvious: a stiffer penalty encourages plan administrators to alter their behavior with respect to employee appeals and requests for documents. Finally, the company has made no claim that it is unable to satisfy the attorneys' fee award. As a result, the district court was well within its discretion in deciding to include this as a penalty and the attorneys' fee award is hereby affirmed.

## 6: The District Court's Decision to Decline Supplemental Jurisdiction

■ The district court declined supplemental jurisdiction over the defendant's state law claims against the third party defendants without discussion of the reasons underlying this decision. This decision is also reviewed for abuse of discretion and circuit precedent supports the plaintiff's argument that the decision to dismiss the state law claims should be upheld.

*Soliday v. Miami County,* 55 F.3d 1158, 1165 (6th Cir.1995), holds that district courts may decline jurisdiction when the state law claims are "distinct and separable from the federal claims over which the District Court retained jurisdiction." Similarly, the Supreme Court directs district courts to assume jurisdiction when the claims are "such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding." *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 349, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (internal quotation marks omitted). In this case, while NHC's third party claims against Grady Gatlin and the Bank stem from the same common nucleus of operative fact as the federal claims, they are clearly separate from the controversy between Judy Gatlin and her employer. In addition, the plaintiff cannot have been expected to bring these claims in one judicial action because the plaintiff is not even party to the suit against the third parties. As a result, we hereby affirm the district court's use of its discretion to dismiss the state law claims without prejudice.

### III. Conclusion

The district court is affirmed on all grounds, with the exception of its calculation of the defendant's penalty for failure to produce requested documents. The defendants acted arbitrarily and capriciously in changing the address for a benefits payment without even bothering to note who was seeking to change the address. The culpability for the failure to mail the check to the correct address consequently lies entirely with the defendants and it is logical that the defendants should bear the costs of their misconduct, not the plaintiff.

The other claims all fall within the district court's discretion. With the exception of the penalty calculation, that discretion was reasonably exercised. We therefore affirm the district court on all grounds except for the penalty for failure to produce, which we now set at $12,100.