*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0080p.06

# UNITED STATES COURTS OF APPEALS

## FOR THE SIXTH CIRCUIT

CHRISTINA MURPHY MINADEO,

               *Plaintiff-Appellant,*

  *v.*

ICI PAINTS d/b/a THE GLIDDEN COMPANY,

               *Defendant-Appellee.*

No. 03-4343

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 00-02591—Paul R. Matia, District Judge.

Argued: September 17, 2004

Decided and Filed: February 18, 2005

Before: SUHRHEINRICH and CLAY, Circuit Judges; NIXON, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Diane A. Calta, JOSEPH W. DIEMERT, JR. & ASSOCIATES, Cleveland, Ohio, for Appellant. David A. Posner, BAKER & HOSTETLER, LLP, Cleveland, Ohio, for Appellee. **ON BRIEF:** Diane A. Calta, Joseph W. Diemert, Jr., JOSEPH W. DIEMERT, JR. & ASSOCIATES, Cleveland, Ohio, for Appellant. David A. Posner, BAKER & HOSTETLER, LLP, Cleveland, Ohio, for Appellee.

_____

**OPINION**

_____

CLAY, Circuit Judge. Plaintiff, Christina Murphy Minadeo ("Murphy"), appeals the district court's grant of summary judgment in favor of Defendant, The Glidden Company, d/b/a/ ICI Paints ("Glidden"),[1] on claims brought pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 100 *et seq.*, ("ERISA"), and OHIO REVISED CODE § 4112.14. Murphy contends that the district court erred: (1) in granting summary judgment to Glidden on claims brought pursuant to §§ 1024(b)(4) and 1025(a) of ERISA; (2) in finding that Murphy's claim under §§ 1024(b)(1) and (b)(2) of ERISA was not properly raised in her complaint; (3) in granting summary judgment to Glidden on Murphy's claim that Glidden violated 29 U.S.C. § 1060 and 26 U.S.C. § 1563 by not crediting her service with a prior employer, a related company, for

_____

[*] The Honorable John T. Nixon, United States District Judge for the Middle District of Tennessee, sitting by designation.

[1] Defendant is incorrectly identified in the complaint, and, hence, in the caption of this case, as ICI Paints d/b/a The Glidden Company. The company's correct name is the Glidden Company d/b/a ICI Paints.

purposes of pension benefits accrual; and (4) in granting summary judgment to Glidden on Murphy's age discrimination claim under Ohio law.

For the reasons set forth below, we **REVERSE** the district court's grant of summary judgment to Glidden on Murphy's claim under 29 U.S.C § 1024(b)(4) and 1025(a), and **REMAND** that claim for further factual development, as explained below. We **AFFIRM** the district court's grant of summary judgment to Glidden on Murphy's claim under 29 U.S.C. § 1060; we **AFFIRM** the district court's determination that Murphy did not properly raise a claim under 29 U.S.C. §§ 1024(b)(1) and (b)(2); and, finally, we **AFFIRM** the district court's grant of summary judgment to Glidden on Murphy's state law age discrimination claims.

## BACKGROUND

### 1.     Procedural History

Murphy filed a three-count complaint against Glidden in the United States District Court for the Northern District of Ohio on October 11, 2000. Murphy's complaint alleged that Glidden had failed to provide her with pension information and had failed to credit her years of service with a prior employer for pension benefits accrual purposes in violation of various provisions of ERISA, and that Glidden had discriminated against her on the basis of her age, in violation of § 4112.14 of the Ohio Revised Code.

Following the completion of discovery, Glidden filed a motion for summary judgment on October 12, 2001. The district court entered an order referring the case to a magistrate judge for a report and recommendation on December 28, 2001. That report and recommendation was issued on March 1, 2002. The magistrate judge found that the defense motion for summary judgment should be granted as to Murphy's state law claim of age discrimination and on her claim that Glidden had failed to provide her with pension information in violation of 29 U.S.C. § 1024, but that it should be denied as to Murphy's claim that Glidden had improperly failed to transfer her pension benefits accrued during her tenure with ICI Paints Canada to Glidden, in violation of 26 U.S.C. § 1563 and 29 U.S.C. § 1060. Both parties filed objections to the report and recommendation on March 18, 2001.

On August 4, 2003, the district court issued an opinion and order granting summary judgment to Glidden on all of the claims raised in Murphy's complaint. Murphy filed a notice of appeal to this Court on September 2, 2003.

### 2.     Substantive Facts

Murphy worked for CIL, Inc., a Canadian company, and its successor-in-interest, ICI Paints Canada, Inc. ("ICI Canada"), from 1980 to 1995. In 1995, Murphy was one of several Canadians courted by Glidden, a related company, to join its paint business in Cleveland. Murphy joined Glidden in January 1995, as a Planning Manager in its Independent Dealer Division. Later that year, she became the Planning Analysis Manager for the same division, and served in that capacity until February 1998. She then held the position of Director of Operations and Administration for another division until it was eliminated in September 1998 as part of a corporate reorganization. At that time, she became the Controller for Glidden's Macco Division.

Corporate restructuring at Glidden had begun in January 1998, under the leadership of new Chairman Dennis Wright. Significant changes were made to Glidden's' internal structure, including the elimination of several Controller positions. In her position as the Macco Controller, which had been preserved, Murphy was directly supervised by Pete Appell ("Appell"), but also reported to Ashok Joshi ("Joshi"), Vice President of Finance for the Macco Division.

Murphy testified in her deposition that she received the impression during her interview with Appell that "it was the young crew that he was proud of. He was communicating the correlation between desirability and youth." Later, Appell entered Murphy's office and exclaimed, "I understand you're forty-

seven years old. It's unbelievable." Murphy testified that most people at the company believed she was thirty-five years old.

On May 12, 1999, approximately one month after Appell made this comment, Murphy was informed that Glidden had decided to eliminate the Macco Controller position due to restructuring and that she was being discharged. The parties do not dispute that the decision to terminate Murphy's employment was made by Appell and Joshi.

As part of her termination package, Murphy received severance pay for forty-eight weeks, totaling $75,323.05 and based on her years of service from 1980 and a base salary of $81,600. The termination letter sent to her by Glidden informed her that "[i]f you are eligible to receive pension benefits, your pension information will be forwarded to you under separate cover." When no such information was forthcoming, Murphy repeatedly called Glidden to inquire about her pension benefits. In the fall of 1999, she had a conversation with Phil Brewer ("Brewer"), an Glidden Human Resources representative, in which she asked him for pension information. During that conversation, Brewer asked Murphy, "you were close to retirement, weren't you[?]" Murphy perceived this comment to be unusual and out of context.

Murphy did not receive the pension information that she repeatedly requested by phone, and, after eleven months, she retained an attorney. In April 2000, Murphy's counsel made a written request for her pension information to Glidden's in-house counsel. That request stated that it was "being made on behalf of Ms. Murphy Minadeo and pursuant to the Employee Retirement Income Security Act."

Despite this request, Murphy did not receive any pension information until August 2000, almost fifteen months after her termination. The information provided to her at that time made it clear that her years of service with ICI Canada had not been credited towards the accrual of her pension benefits. While Murphy was credited for years of service dating back to February 1980, when she first joined CIL, for purposes of her severance package, she was credited only with years worked in this country, beginning in 1995, for purposes of her pension benefits. Murphy contends that the failure to transfer her pension resulted in a devalued pension benefit.

## DISCUSSION

### 1.     Standard of Review

We review a district court's grant of summary judgment *de novo*, using the same standard as the district court. *Farhat v. Jopke*, 370 F.3d 580, 587 (6th Cir. 2004)(citing *Equitable Life Assur. Soc'y v. Poe*, 143 F.3d 1013, 1015 (6th Cir. 1998). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing a district court's grant of summary judgment, we view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 576-77 (6th Cir. 2004)(citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000); *Smith v. Thornburg*, 136 F.3d 1070, 1074 (6th Cir. 1998)).

In addition to the grants of summary judgment in this case, we are reviewing the district court's determination that Murphy failed to properly plead her claims under 29 U.S.C. §§ 1024(b)(1) or (2). A district court's decision regarding the legal sufficiency of a pleading is a question of law and is therefore also subject to *de novo* review by this Court. *Shields v. Fox Television Station, Inc.*, No. 98-6689, 2000 WL 658054 (6th Cir. May 9, 2000) (unpublished opinion) (citing *LRL Properties v. Portage Metro Housing Auth.,* 55 F.3d 1097, 1104 (6th Cir. 1995)).

**2.      Whether the District Court erred in granting summary judgment on claims brought under §§ 1024(b)(4) and 1025(a) of ERISA?**

Murphy contends that the district court erred in adopting the magistrate judge's recommendation that summary judgment be granted to Glidden on Murphy's claims that Glidden violated 29 U.S.C. §§ 1024(b)(4) and 1025(a).**2**  Those provisions of ERISA require a benefits plan administrator to furnish certain benefits-related documents to a plan participant upon her written request.  Murphy argues that Glidden violated these provisions when, after her attorney sent a written request for specific pension benefits information to Glidden on Murphy's behalf in April 2000, Glidden did not respond until almost four months later and then supplied only some of the requested information.

**a.      Did the district court correctly conclude that Murphy's claims under 1024(b)(4) and 1025(a) are barred by this Court's decision in *Bartling v. Fruehauf Corp*., 29 F.3d 1062 (6th Cir. 1994)?**

The district court rejected Murphy's claim under §§ 1024(b)(4) and 1025(a) as foreclosed by this Court's decision in *Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1072 (6th Cir. 1994).  We disagree with the district court's interpretation of *Bartling*, which does not follow from the language of *Bartling* and is in conflict with the purposes of the ERISA disclosure requirements.

As the Supreme Court noted in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 118 (1989)(quoting H.R. Rep. No. 93-533, p. 11 (1973)), "Congress' purpose in enacting the ERISA disclosure provisions" was to "ensur[e] that 'the individual participant knows exactly where he stands with respect to the plan.'"  These provisions are given their teeth by 29 U.S.C. § 1132(c), which provides that a benefits plan administrator who fails to respond within thirty days to a request for information made pursuant to ERISA's disclosure provisions may be liable to the plan participant for up to $100 per day.

In *Bartling*, we held that a plan administrator could not be required under 1024(b) of ERISA to disclose pension benefit information to a non-participant (even the attorney of a participant) without first receiving written authorization from the participant.  29 F.3d at 1072.  We note that the factual circumstances of *Bartling* are quite different from those presented by this case, principally because the actions of the defendant in *Bartling* can be described as forthright and non-evasive.  In *Bartling*, after receiving an attorney request for pension benefits information on behalf of several participants,**3** the defendants furnished much of the information requested, including the pension plan in question, the three most recent Annual Returns, and the latest version of the Summary Plan Description.  At the same time, the defendants informed plaintiff's counsel that individual benefits computations would not be provided without authorizations from the plan participants.  Once those authorizations were received, defendants provided the individual benefit computations.  *Bartling* affirmed the right of the plan administrator to seek a written authorization whenever any non-participant, even a participant's attorney, requested benefits information.

In contrast to the behavior of the defendant in *Bartling*, Glidden's handling of the request by Murphy's attorney for benefits information to which she was entitled under ERISA and which was expressly made on her behalf and pursuant to ERISA, can only be described as entirely inappropriate.  Glidden did

---

**2**Murphy's appellate brief alleges that "the district court erred when it found that Appellant's claims under 29 U.S.C. 1024(a) and 1024(b)(4) failed," when it fact the district court found that her claims under §§ *1025(a)* and 1025(b)(4) failed.  This appears to be an inadvertent typographical error, as Murphy's brief in opposition to Glidden's motion for summary judgment before the district court correctly cited § 1025(a).  We therefore will proceed as though Murphy had correctly cited § 1025(a) in her brief before this Court.

**3**Plaintiffs' counsel in *Bartling* twice requested the information before receiving a response.  However, between the first request and the second the employing corporation was sold, which may explain the delay.

not inform Murphy's attorney that the information would not be provided without a signed authorization; rather, it simply ignored the request for almost four months.

Pension plan administrators who treat our decision in *Bartling* as a license to simply disregard a written request for pension benefits information if it is made by a participant's attorney, rather than by a participant herself, both misconstrue the holding of that case and misunderstand their obligations under ERISA. Again, ERISA disclosure requirements exist to help ensure that participants have access to information about their pension plans. As the Third Circuit has cogently observed, "the objective of [the ERISA disclosure requirements] would be ill served . . . by permitting administrators to refuse to respond with no indication that authori[zation from the participant] is even an issue." *Daniels v. Thomas & Betts Corp.*, 263 F.3d 66, 77 (3rd Cir. 2001).[4]

What *Bartling* says is that a plan administrator may require written authorization from a plan participant before satisfying a non-participant's request for benefits information. Not inconsistent with that rule, we hold that a plan administrator is *not* entitled to ignore a request for pension benefits information made by an attorney on behalf of a participant, as Glidden did in this case for almost four months. Instead, a plan administrator must either provide the requested information directly to the plan beneficiary (we note that this option would have made a great deal of sense in the present case, as Murphy herself had first repeatedly requested the information by telephone before enlisting the aid of an attorney), or must act as the defendant in *Bartling* did, and inform the attorney that the information will be released upon the receipt of an authorization signed by the plan participant. A plan administrator who fails to take either of these steps within the thirty day period imposed by 29 U.S.C. § 1132(c) is subject to the fines authorized by that same provision, at the discretion of the district court.

### b.          Has Plaintiff sued the correct defendant?

It remains for us to consider Glidden's argument that it is not a proper defendant to this claim. Glidden argues that Murphy has failed to state a claim upon which relief can be granted because Glidden is not the administrator of the pension plan. Rather, according to Defendant, Murphy's pension benefit plan designated the administrator as the "Pension Committee of ICI Paints."

The magistrate judge rejected this argument because it determined that Glidden had raised it for the first time in its reply brief to Plaintiff's brief in opposition to Defendant's motion for summary judgment, and therefore that it was not properly raised before the court. We must disagree with this determination. In its brief in support of its motion for summary judgment, Glidden provided the statutory definition of a pension plan administrator under 29 U.S.C. § 1002(16)(A)(i), noted that the pension plan administrator in this case was the "Pension Committee of ICI Paints," and then argued that Murphy could not establish that she made any written request for information to the plan administrator.

The magistrate judge was correct that it was not until its reply brief that Defendant specifically contended that its argument that Murphy had never requested information from the plan administrator (because Glidden was not the plan administrator) required the court to find that she had failed to state a claim upon which relief could be granted. However, because the issue of whether Murphy's request for information was directed to the wrong party was raised in Defendant's brief in support of its motion for summary judgment, we conclude that we must consider whether Murphy has sued the wrong party with respect to her claims under §§ 1024(b)(4) and 1025(a).

---

[4] *Daniels* "respectfully disagree[s]" with *Bartling*'s conclusion that requests for benefits information made by attorneys should not be treated differently than such requests from other non-participants. 263 F.3d at 77. Where *Bartling* always permits a plan administrator to ask an attorney for a signed release from her client-participant, *Daniels* authorizes such requests only "[i]n the rare case where the administrator has reason to question [the attorney's] authority." *Id.* This difference does not undermine our citation here to the thoughtful observation that the purposes of ERISA are not served when a plan administrator simply ignores a non-participant's request for information, without asking for an authorization to be provided.

Unfortunately, the record does not suffice to allow us to resolve this question. While "[t]he law in this Circuit is clear that '[o]nly a plan administrator can be held liable under section 1132(c),'" *Hiney Printing Co. v. Brantner*, 243 F.3d 956, 961 (6th Cir. 2001)(quoting *VanderKlok v. Provident Life & Accident Insurance Co.*, 956 F.2d 610, 617 (6th Cir. 1992)), there is no information before this Court which adequately explains the relationship between Glidden and the "Pension Committee of ICI Paints" ("Pension Committee").

We note, however, that the available related information suggests both that Glidden participated in the administration of benefits under the pension plan and that the Pension Committee may be so closely related to Glidden that a request to Glidden should have been construed as one to the Pension Committee. A May 12, 1999 letter to Murphy from Bruce Cahoon ("Cahoon"), Director of Compensation and Benefits at Glidden, discussed her severance package and informed her that her pension information would be forwarded to her under separate cover. The address on that letterhead, 925 Euclid Avenue, Cleveland, Ohio, is the same as the address listed in the pension plan for the Pension Committee and is the same address to which Murphy's attorney sent the request for pension benefits information. Murphy did eventually receive another letter from Cahoon, which provided some of the benefits information requested. Furthermore, despite Murphy's repeated phone calls requesting her pension benefits information and despite her attorney's written request on her behalf for that same information, which were all directed to Glidden, no one at Glidden ever informed Murphy that she was contacting the wrong party for that information.

We reverse the district court's grant of summary judgment with respect to Murphy's claim under 29 U.S.C. §§ 1024(b) and 1025(a), and remand this issue to the district court, for further factual development of the relationship between the plan administrator and Glidden in this case and determination of whether Glidden is a proper defendant to this claim. If the district court finds that Glidden is a proper defendant with respect to these claims, it will then have discretion to impose fines pursuant to § 1132(c) of ERISA.

### c.      Glidden's conduct with respect to Murphy's requests for pension information

We are compelled to note that we are bewildered by Glidden's actions with respect to Murphy's requests for pension benefits information. It may turn out, after further factual development, that the legal requirements of ERISA will not hold Glidden liable with respect to this claim. Nonetheless, Glidden's actions in this regard are certainly contrary to the spirit of ERISA. To briefly review: after informing Murphy by letter that she would receive pension benefits information, Glidden did not provide that information and continued to fail to provide it throughout eleven months of telephonic requests by Murphy and then after a written request by her attorney.

If the reason for this refusal was that Murphy was mis-directing her requests for pension information to Glidden rather than to the Pension Committee, we are confounded by Glidden's failure to simply point out Murphy's mistake to her. Likewise, if the reason for this refusal was that Murphy herself was required to request the information in writing, we cannot understand why Glidden did not so instruct her. In short, Glidden's evasive and disingenuous behavior with respect to a former employee's attempts to exercise her ERISA rights is incomprehensible.

### 3.      Whether the District Court erred in granting summary judgment on Plaintiff's claim that defendant is part of a controlled group of corporations under 26 U.S.C. § 1563 and thus a single employer subject to § 1060 of ERISA.

Murphy challenges the district court's grant of summary judgment to Defendants on her claim that Glidden failed to credit her service with her Canadian employer for purposes of computing the accrual of her pension benefits, in violation of another provision of ERISA, 29 U.S.C. § 1060. The district court based the entry of summary judgment on two independent determinations, and we will examine each in turn.

a.        **Whether ICI Paints Canada and the Glidden Company are part of a "controlled group of corporations."**

Murphy's complaint charged that Glidden and ICI Canada are members of a "controlled group of corporations" within the meaning of the Internal Revenue Code, 26 U.S.C. § 1563(a), and must therefore be treated as a single employer under 29 U.S.C. § 1060. In relevant part, § 1563(a) defines a controlled group of corporations as:

> (a) . . . any group of —
> (1) **Parent-subsidiary controlled group.**— One or more chains of corporations connected through stock ownership with a common parent corporation if —
> > **(A)** stock possessing at least 80 percent of the total combined voting power of all classes of stock entitled to vote or at least 80 percent of the total value of shares of all classes of stock of each of the corporations, except the parent corporation, is owned . . . by one or more of the other corporations; and
> > **(B)** the common parent corporation owns . . .stock possessing at least 80 percent of the total combined voting power of all classes of stock entitled to vote or at least 80 percent of the total value of shares of all classes of stock of at least one of the other corporations . . .

In support of her claim that ICI Canada and Glidden are part of a controlled group of corporations, Murphy presents Glidden's answer to one of her interrogatories posed during discovery, in which Glidden admitted that it was a wholly owned subsidiary of ICI American Holding, Inc.; that ICI Canada was a wholly owned subsidiary of ICI Omnicron B.V.; and that ICI Omnicron B.V. owns 201 shares of stock in ICI American holding. This evidence, of course, does not satisfy the just-cited statutory definition of a "controlled group of corporations."[5]

In our view, the district court properly applied the summary judgment standard with respect to this issue and correctly granted summary judgment to Glidden. Where there is not sufficient evidence for a jury to return a verdict for the non-moving party, summary judgment should be granted. *Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 587 (1986); *South Ridge Baptist Church v. Industrial Commission of Ohio*, 911 F.2d 1203 (6th Cir. 1990)(citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)). In other words, a party moving for summary judgment may satisfy its burden to show that there are no genuine issues of material fact simply "by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Street v. J. C. Bradford & Company*, 886 F.2d 1472, 1479 (6th Cir. 1990)(citations omitted). The fact that the evidence may be in the control of the defendant does not change the plaintiff's burden to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery. *Anderson*, 477 U.S. at 257.

We are troubled in this case by our concern, heightened by defense counsel's inability to respond to questioning on this point during oral argument, that it is possible that a controlled group relationship may in fact exist between Glidden and ICI Canada. Our suspicions, however, cannot substitute for the requirement that the plaintiff present sufficient evidence to support a finding in her favor on that issue. In

---

[5]Murphy's brief abbreviates the statutory definition, contending that "[s]ection 1563(a) defines a Controlled Group as follows: (1) Parent Subsidiary controlled group – One or more chains of corporations connected through stock ownership with a common parent corporation–." Pl. Brief at 28. Plaintiff's citation to §1563 stops there. Of course, if that were the entire definition of a controlled group under § 1563, Murphy would have submitted sufficient evidence to establish a controlled group relationship. However, her brief omits the critical limiting clauses that follow the section of the statute she cites.

the absence of any indication that Murphy was not afforded a sufficient opportunity for discovery,[6] we must affirm the district court's grant of summary judgment. *See Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*, 280 F.3d 619, 627 (citations omitted).

> **b.    Whether ICI Paints Canada was a "participating company," under the terms of Murphy's pension plan.**

The district court found, as a second basis for granting summary judgment on Murphy's claim that Glidden improperly failed to credit her Canadian employment for purposes of pension benefits accrual, that she had not shown that ICI Canada was a "participating company" under her pension plan with Glidden, as required by 29 C.F.R. §2530.210(d)(2). That provision of the Code of Federal Regulations states, in relevant part, that

> in determining an employee's service for eligibility to participate and vesting purposes, all service with any employer which is a member of the controlled group of corporations shall be taken into account . . . in determining a participant's service for *benefits accrual purposes*, all service during periods of participation *covered under the plan* with any employer which is a member of the controlled group of corporations shall be taken into account. (emphasis added).

In other words, unlike a determination of an employee's service for eligibility and vesting purposes, a determination of service for accrual of benefits purposes ultimately depends on the language of the pension plan itself. Under the terms of Murphy's pension plan with Glidden, an employee's pension benefit is computed based upon the employee's service with a participating company. The plan defines a "participating company" as "any domestic or foreign corporation which is a member of the Affiliated Group and which is designated by the Board as a Participating Company."

Murphy has presented no evidence that ICI Canada was a participating company under the terms of her pension plan with Glidden. As with her claim that ICI Canada and Glidden are part of a controlled group of corporations, Murphy has failed to present sufficient evidence to support an essential element of her claim, and we therefore affirm the district court's grant of summary judgment to Glidden.

**4.    Whether the district court erred in finding that plaintiff's claims under § 1024(b)(1) and (2) of ERISA were not properly raised in her complaint.**

Murphy argues that the district court erred in finding that her complaint neither alleged nor presented any evidence of violations of §§1024(b)(1) or (2). Section 1024(b)(1) requires a pension plan administrator to furnish plan participants with summary plan descriptions within ninety days of becoming a participant. Section 1024(b)(2) requires the plan administrator to make copies of the latest updated summary plan description, the latest annual report, as well as specified other documents, available for examination by any plan participant.

In her complaint, Murphy alleged that following her termination, she requested information pertaining to her pension plan, but that "no information was ever provided to Plaintiff regarding her total pension benefits accrued and vested," despite the fact that her "request was made in writing as required by statute." Murphy argued that Defendant's conduct "has violated the Employee Retirement Income Security

---

[6]Defense counsel refused to respond to some interrogatories which may have helped Plaintiff establish the existence of a controlled group of corporations, including questions about Glidden's place of incorporation and the identity of Glidden's ten largest stockholders. We strongly disagree with defense counsel's characterization of those interrogatories as "irrelevant." However, Plaintiff never moved to compel discovery on these issues pursuant to Rule 37 of the Federal Rules of Civil Procedure.

Act, 29 U.S.C., Section 1024, et seq, which makes it unlawful to fail to provide such information to an employee when terminated or pursuant to a, not more than once a year, written request."

Federal pleadings rules "do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is a 'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001)(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). We will construe pleadings "liberally in order to prevent errors in draftsmanship from barring justice to litigants." *Ritchie v. United Mine Workers of America*, 410 F.2d 827, 833 (6th Cir. 1969)(citing Fed. R. Civ. P. 8(f)).

The flexibility that these rules provide cannot be read to save Murphy's claims under §§ 1024(b)(1) or (b)(2). Her complaint repeatedly referenced a statutory requirement that a request for benefits information be made in writing. Neither § 1024(b)(1) nor § 1024(b)(2) requires that information be requested by a participant at all, let alone that such request be in writing.[7] Furthermore, the complaint specifically alleged that Glidden had failed to provide information regarding her total benefits accrued and vested. That information is not covered by either § 1024(b)(1) or (b)(2). Because the complaint referenced that specific information, and only that specific information, and because it repeatedly cited the statutory requirement of a written request, it cannot be construed to have put Glidden on fair notice that Murphy was alleging violations of §§ 1024(b)(1) and (b)(2). We therefore affirm the district court's determination on this issue.

**5.      Whether the district court erred in granting summary judgment to defendant on Plaintiff's claim of age discrimination under Ohio law.**

Finally, Murphy alleges that she was discharged because of her age in violation of OHIO REV. CODE § 4112. The federal Age Discrimination in Employment Act ("ADEA") is applicable to state law claims brought pursuant to Ohio age discrimination law. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 357 (6th Cir. 1998)("[u]nder Ohio law, the elements and burden of proof in a state age-discrimination claim parallel the ADEA analysis")(citations omitted).

A plaintiff may establish a case under the ADEA either by presenting direct evidence of discrimination, or by establishing a prima facie case of age discrimination under the *McDonnell-Douglas* burden-shifting analysis. *Rowan v. Lockheed Martin Energy Systems*, 360 F.3d 544, 547 (6th Cir. 2004). Murphy contends that she can establish that she was discharged because of her age under either method of proof. We will examine each in turn.

**a.      Direct evidence of age discrimination**

"Direct evidence is evidence that proves the existence of a fact without requiring any inferences." *Id.* at 548. If a plaintiff succeeds in presenting direct evidence of a discriminatory motive, "the burden shifts to the employer to prove by a preponderance of the evidence that it would have made the same decision absent the impermissible motive." *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004)(quoting *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 382 (6th Cir. 2002)).

Murphy points to a comment made by Appell, her supervisor, as direct evidence of age discrimination. Appell remarked to Murphy, "I understand you're forty-seven years old. It's

---

[7] Both § 1024(b)(4) and 1025(a) do require a written request. Murphy's claims under those provisions are the subject of the first part of this discussion.

unbelievable."[8] Murphy further insists that her own deposition testimony that Appell implied a "correlation between desirability and youth" during his interview of her, as well as the fact that she was terminated close in time (three years) to when her pension would have fully vested, also constituted direct evidence of age discrimination.

This "evidence" does not even approach the standard required for a plaintiff to successfully present direct evidence of an employer's discriminatory motive. We could not possibly conclude that the comments and circumstances pointed to by Murphy show a discriminatory motive on the part of Glidden without drawing undue inferences in favor of Murphy's tenuous argument. Of course, we decline to do so, as direct evidence does not require such inferences. We agree with the district court's determination that Murphy failed to present direct evidence of age discrimination.

### b.          Prima facie case of age discrimination

A plaintiff who fails to proffer direct evidence of age discrimination may instead establish a prima facie case of age discrimination under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Rowan*, 360 F.3d at 547. The parties agree that Murphy satisfies the first three elements of a prima facie case: 1) she was a member of a protected class; 2) she was discharged; and 3) she was qualified for the position she held. *Id.* (citing *Cox v. DOT*, 53 F.3d 146, 150 (6th Cir.1995)).

The fourth element generally requires a showing that the plaintiff was replaced by a person outside the protected class. However, we have held that, alternatively, the "fourth element may also be satisfied by showing that similarly situated non-protected employees were treated more favorably." *Clayton v. Meijer, Inc.*, 281 F.3d 605, 610 (6th Cir. 2002) (quoting *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995)). Murphy argues that Doug Post ("Post"), who was thirty-four years old, is a similarly situated individual who was treated more favorably because he was retained in his position, as Zynolyte Plant Controller.

"It is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of [an employee outside the protected class], the plaintiff must show that the 'comparables' are similarly-situated *in all respects*." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992). Murphy fails to present evidence that she and Post were similarly situated, and she also fails to rebut evidence of substantive differences between the positions occupied by Murphy and Post. Joshi, a Vice President of Finance at Glidden, testified that Post's position, as a "plant controller," "was not a business controller position or at the same level as other business controllers," including Murphy. Post's position was on-site at a plant, whereas Murphy worked in a corporate office. Post's primary responsibilities were for production and "costing" at the Zynolyte Plant, while Murphy was responsible for conducting business analysis for the Macco Division. Murphy does not point to any facts supported by the record to refute this evidence that she and Post were not "similarly situated."[9]

---

[8] Murphy also cites as direct evidence of discrimination the observation of Phil Brewer, a Human Resources employee uninvolved in the decision to terminate her employment, that she had been close to retirement age at the time of her discharge. However, an isolated comment made by a non-decisionmaker is not sufficient evidence of a discriminatory motive. *Hull v. Cuyahoga Valley Joint Vocational School Dist. Bd. of Educ.*, 926 F.2d 505, 514 (6th Cir. 1991)(citations omitted). Furthermore, we agree with the district court that even if Brewer had been involved in the decision to discharge Murphy, his remark would not constitute direct evidence of age discrimination.

[9] Rather inexplicably, Murphy attempts to refute this evidence by quoting Joshi as saying "the job, you know, what you do is very different, but yes, it's on the same level of jobs." This statement would not be particularly helpful to Murphy even if it were a comparison of the Zynolyte and Macco Controller positions. Because it is actually a comparison of the Macco Controller and Director of Cost Accounting positions, it is entirely irrelevant. Murphy's error in this regard was pointed out by the district court.

We conclude that Murphy has failed to establish the fourth and final element necessary to make out a prima facie case of age discrimination, and thus affirm the district court's grant of summary judgment to Defendant on this issue.

## CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's grant of summary judgment to Glidden on Murphy's claim that Glidden failed to provide pension benefits information in violation of 29 U.S.C. § 1024(b)(4) and 1025(a), and **REMAND** that claim for further factual development, as explained above. We **AFFIRM** the district court's grant of summary judgment to Glidden on Murphy's claim under 29 U.S.C. § 1060 that Glidden improperly failed to credit her service with her Canadian employer for pension benefits accrual purposes. We also **AFFIRM** the district court's determination that Murphy did not properly raise a claim under 29 U.S.C. § 1024(b)(1) and (b)(2). Finally, we **AFFIRM** the district court's grant of summary judgment to Glidden on Murphy's state law age discrimination claims.