NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0668n.06
Filed: September 5, 2006

No. 05-6403

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Matthew **CREMEANS,** an infant,       )
by and through Kimie L. Cremeans,      )
his next friend,                       )
                                       )
      **Plaintiff-Appellant,**       )       ON APPEAL FROM THE
                                       )       UNITED STATES DISTRICT COURT
**v.**                                 )       FOR THE EASTERN DISTRICT
                                       )       OF KENTUCKY
**SPEEDWAY SUPERAMERICA LLC,**         )
                                       )       OPINION
      **Defendant-Appellee.**        )
_____        )

**Before: BOGGS, Chief Judge, and COLE, Circuit Judge, and WISEMAN,[*] District Judge.**

      **Thomas A. Wiseman, Jr., District Judge.** Plaintiff-Appellant Matthew Cremeans, an

infant, by and through his mother Kimie L. Cremeans ("Ms. Cremeans"), appeals the district court's

order granting summary judgment to Defendant-Appellee Speedway Superamerica LLC ("SSA").

In this diversity negligence action, Plaintiff sues for injuries sustained by the then three-year old

child, Matthew, when the hinge side of the door to the public restroom located on the premises of

an SSA convenience store in Versailles, Kentucky closed on his finger. Plaintiff claimed that SSA

was negligent in its maintenance of the door, namely that the door closed too fast and was too heavy.

_____

[*]The Honorable Thomas A. Wiseman, Jr., United States District Court for the Middle District of
Tennessee, sitting by designation.

1

The district court found that SSA owed no duty to warn Plaintiff of the open and obvious danger related to the pinching hazard of the door hinge and further, Plaintiff could not prove causation. Accordingly, the district court granted summary judgment in favor of SSA. For the reasons that follow, we affirm.

## I. STANDARD OF REVIEW

The district court's grant of Appellee's Motion for Summary Judgment is subject to *de novo* review by this Court. *Minadeo v. ICI Paints*, 398 F.3d 751, 756 (6th Cir. 2005). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact , which may be accomplished by demonstrating that the non-moving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In response the non-moving party must present "significant probative evidence to show that there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.* , 8 F.3d 335, 340 (6th Cir. 1993). To the extent there are any disputed issues of fact, this court must view the evidence in the light most favorable to the nonmoving party to determine whether the moving party is nonetheless entitled to summary judgment as a matter of law. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II. FACTS

On March 2, 2004, Appellant-Plaintiff Matthew Cremeans, then three years-old, his mother Kimie Cremeans ("Ms. Cremeans"), and her aunt Opal Norris ("Ms. Norris") were traveling

2

from Louisiana to Huntingdon, West Virginia. (JA 10). Matthew, his mother, and his great aunt made this trip regularly and, as they had on every such trip in the last ten years, they stopped at Appellee-Defendant Speedway SuperAmerica's ("SSA") convenience store located on Lexington Road in Versailles, Kentucky to use the restroom. (JA 10.)

Ms. Cremeans noticed upon entering the restroom that the door was heavy and hard to push open. Matthew and his mother finished using the restroom and announced to Ms. Norris that they were going to get something to drink. As they exited the restroom together, Ms. Cremeans pulled open the door and exited with the Plaintiff walking under her arm. As Ms. Cremeans let go of the door and before the door had closed, Matthew turned around to reenter the restroom, apparently to rejoin his great-aunt Ms. Norris. As the restroom door shut, Plaintiff's middle finger got caught in the hinge of the door, and his fingertip was amputated and bleeding. Ms. Cremeans immediately took Plaintiff back into the restroom to get paper towels and run water over his finger to stop the bleeding. Plaintiff's fingertip was initially sewed back on, but later became infected and had to be repaired by a plastic surgeon. (JA 77-79.)

Plaintiff brought suit against SSA in the United States District Court for the Eastern District of Kentucky claiming negligence in SSA's maintenance of the door, namely that the door closed too fast, was too heavy, and no measures were taken to warn customers of the condition. (JA 7.) After bringing suit against SSA, Plaintiff retained Peter Curless, a Mechanical Engineer, to review the safety of the door in question. Mr. Curless inspected the premises on November 10, 2004. (JA 58.) In his report, Mr. Curless opined that because the door's closing force and opening speed did not meet appropriate Kentucky Building Codes, the door itself contributed to Matthew's injury.

3

According to Mr. Curless, a door's opening force and closing speed are regulated by the Kentucky Building Codes set forth in the ADA sections of the code. A door's closing speed is controlled by a door closer, which is used to pull a door closed in a safe and reasonable manner. In his expert report, Mr. Curless opined that because the door's closing force and opening speed did not meet appropriate Kentucky Building Codes, the door itself contributed to Plaintiff's injury. He also noted that "[t]he door force/closing time requirements are in the ADA sections of the building code." Mr. Curless testified in his deposition that, in his opinion, the door did not meet applicable industry standards and did not meet the customary practices in terms of adjustment. (JA 125). He admitted that he was unable to locate any written industry standards on door weights and that the fact that the door was heavy was not by itself unreasonable or negligent. Rather, Mr. Curless opined that the weight of the door combined with the fact that the door slammed shut very quickly, not meeting door closure speed requirements, created an unnecessary danger. (JA 127).

The door weighed 118 pounds. Mr. Curless measured the opening force to be 5.5 to 6 pounds, and the 1994 Kentucky Building Codes require an opening force of an interior hinged door to be a maximum of five (5) pounds. The closing time required under the 1994 Kentucky Building Codes is not less than three (3) seconds and this door was found to close in 2.35 seconds from a position of seventy (70) degrees to three (3) inches from its latch or closing position. Further, the 2002 Kentucky Building Codes require a closing time of not less than five (5) seconds from ninety (90) degrees to twelve (12) degrees and this door had an average closing time of 3.1 seconds. The door closure did not slow the door until the latch point of the door was almost reached.

According to SSA, the restroom door was installed sometime in 1986 or 1987 and was not

4

subject to any internal written standards, protocols or guidelines concerning the latch and closing speed. (JA 44-45). The door was inspected by former SSA Maintenance Technician, William Etue on two occasions. According to SSA, no deficiencies in the safety or construction of the door were noted and the door was found to be in good working order during those inspections. (JA 45). Although the closing speed of the women's restroom door was adjustable, SSA reported that it was adjusted on an as needed basis by SSA maintenance technicians or SSA subcontractors. Outside of any adjustment that may have been made at installation, there is no record of any adjustment to the closing speed of the door at any time before or since the incident. (JA 52.) According to SSA, the area in which the incident occurred, including the restroom door, has not been changed, altered or remodeled in any way since the date of the incident (JA 49).

Mr. Curless, expressed the opinion that because the door closes too fast, in violation of the 1994 and 2002 Kentucky Building Codes, it creates more of a risk to the user of the door than is necessary. Yet, Mr. Curless also noted that "because there is an inherent pinch point at the hinge of a closing door," he could not say that a door meeting the building code standards for door closing force and speed would have prevented the injury. (JA 96). Moreover, Mr. Curless testified that given the weight of the door, even if it had met the closing speed requirements, Plaintiff probably would have sustained an injury to his finger, but he could not say to what extent. (JA 119).

Although Mr. Curless ultimately concluded that the combination of the weight of the door and the improper door closure setting increased the crushing or pinching force which caused Plaintiff's injury, he also testified that "the pinch point at doors is an open and obvious hazard that people generally recognize." (JA 97). However, Mr. Curless noted that "children may not recognize

5

the pinch point hazard, and for this reason door hinge safety guards are available." (JA 97). Based on a finding that "the layout of the restroom is such that it encourages people to stand near the door hinge when the restroom is crowded, and [there is a] high probability that young children will accompany a parent into the restroom and not receive close supervision while the parent uses the bathroom," Mr. Curless recommended the use of door hinge guards in the restroom at issue. (JA 98). Yet, in his deposition, Mr. Curless conceded that if applied to this door, door hinge guards might not have prevented Plaintiff's injury because they would have been placed on the other side of the door.

Mr. Curless did not testify that he would consider the door an unreasonably dangerous door because it did not meet current building code requirements. Rather he testified that failure to comply with building code requirements created "more risk or more hazard to the user of the door than necessary." (JA 117). He testified that he thought it was "appropriate for business owners to try to comply with the current building code standards for safety, and it [was] reasonable . . . for the business owners to comply with the current standards when it's done at no cost and very easily done." (JA 117). According to Mr. Curless, the fact that the door did not meet either the 1994 or 2002 standard on the closing time "makes it more easy to say . . . that it's closing too fast and it's not reasonable." (JA 117).

### III. PROCEDURAL BACKGROUND

At the close of discovery, Appellee SSA filed a Motion for Summary Judgment arguing that it had no duty to warn Plaintiff, an invitee, of the known, open and obvious risk that his finger might get caught if placed in the hinge area of the door. (JA 31-34.) On August 9, 2005, the district court

6

granted summary judgment in favor of SSA as to liability on two separate, independent grounds – absence of legal duty and absence of evidence of causation. The district court first noted that the Kentucky Supreme Court's decision in *Lanier v. Wal-Mart Stores, Inc.,* 99 S.W.3d 431 (Ky. 2003), did not alter the well-established common law rule that a business owner does not owe a legal duty to warn its invitees of dangers open and obvious or known to them and therefore, the burden-shifting rule articulated in *Lanier* did not apply to the facts of the case before it. (JA 16.) The district court premised its ruling on the finding that SSA had no duty to warn Plaintiff of the danger because Ms. Cremeans had actual knowledge of the conditions of the door. Further, the danger that the door would close on Plaintiff's finger if it was placed on the doorframe near the hinge was so obvious that Plaintiff should have known of the risk. (JA 17.) As an alternative basis for its ruling, the district court also found that, even if Plaintiff had proved that SSA owed him a duty, summary judgment was nonetheless proper because Plaintiff had failed to prove a casual link between the allegedly defective condition of the door and the plaintiff's injury. (JA 18.)

## IV. DISCUSSION

Plaintiff appeals the ruling of the court on the absence of duty and failure to prove causation. Plaintiff also argues on appeal, as he did below, that the burden-shifting approach articulated in *Lanier*, a slip-and-fall case, precludes summary judgment in favor of SSA. (Appellant's Brief, at 23-25). Plaintiff contends that the district court erred by ignoring the decision in *Lanier* when it analyzed Plaintiff's claims under the "open and obvious" doctrine. (Appellant's Brief at 23-24). Yet, the district court did consider *Lanier* in its decision, finding that "it did not impose any greater duty on the defendant" than the duty owed to an invitee and noting that *Lanier* simply shifted the

burden of proof on the elements of causation and notice." (JA 16.)

We agree with the District Court that the probability that sticking one's finger into a hinge of a closing door is so open and obvious that no duty to Ms. Cremeans or her child existed, nor was there a duty to warn of any danger. We also agree with the district court's conclusion that the Plaintiff has not offered proof of causation.

Plaintiff argues for the first time on appeal that SSA's violation of the Kentucky Building Code and the ADA in its maintenance of the restroom door was negligence *per se*, and is a factual question for the jury. (Appellant's Brief at 10-14). This argument is not properly before this court because Plaintiff did not raise or brief a claim for negligence *per se* below. (Appellee's Brief at 22; Appellee's Supp. Brief at 2.) Moreover, since Plaintiff cannot establish causation, a necessary element to succeed on a claim of either common law negligence or negligence *per se*, the claim for negligence *per se* is without merit.

Having had the benefit of oral argument, and having studied the record on appeal and the briefs of the parties, we are not persuaded that the district court erred in dismissing the complaint. The issues raised by this appeal are the same as those addressed by the district court in a thorough and well-reasoned opinion. The judgment of the district court is **AFFIRMED.**