**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 18a0415n.06

Case Nos. 17-2228

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

<table>
<tr><td>COMPRESSOR ENGINEERING<br>CORPORATION,</td><td>)<br>)<br>)</td><td rowspan="12"></td></tr>
</table>

COMPRESSOR ENGINEERING
CORPORATION,

  Plaintiff-Appellant,

v.

MANUFACTURERS FINANCIAL
CORPORATION, et al.,

  Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF
MICHIGAN

FILED
Aug 16, 2018
DEBORAH S. HUNT, Clerk

BEFORE: GILMAN, GIBBONS, and THAPAR, Circuit Judges.

GIBBONS, Circuit Judge. Compressor Engineering Corp. appeals the district court's grant of summary judgment in favor of the appellee, Manufacturers Financial Corp ("MFC"), in its Telephone Consumer Protection Act class action. Because a reasonable juror could find that the faxed ads were sent "on behalf of" MFC, we reverse. Additionally, we remand the case for the district court to decide in the first instance whether the Abraham declarations are inadmissible hearsay.

I.

This case is one of many lawsuits filed in connection with a company known as Business to Business Solutions ("B2B"). B2B was a fax advertising business operated by Carolyn Abraham that catered to small businesses. *See Bridging Communities, Inc. v. Top Flite Fin. Incorp.*,

843 F.3d 1119, 1122 (6th Cir. 2016). For a fee, B2B faxed clients' advertisements to hundreds of numbers in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b).[1] *Id.* These faxes from B2B have led to over 100 lawsuits. *Siding & Insulation Co. v. Alco Vending, Inc.*, No. 1:11-CV-1060, 2017 WL 3686552, at *1 (N.D. Ohio Aug. 25, 2017).

The current case involves two faxes advertising MFC sent by B2B in November of 2005. Fax One contained the name and contact information for MFC and an MFC employee, Julia Khan. Fax Two did not contain any MFC-specific information. Both faxes included the statement: "This message is the exclusive property of [B2B], which is solely responsible for its contents and destinations." DE 139-4, Stephens Dep. Exhibits, Page ID 5443–44. MFC did not provide B2B with the list of contacts to receive the fax advertisements.

Richard K. Stephens owns MFC and another company called Charity Marketing, LLC. MFC employed both Julia Kahn and Larry Brundage. Brundage also owned a company confusingly called Charity Marketing Services, LLC ("CMS"). CMS operated in the evenings to make cold calls and generate leads for mortgages. CMS was initially located in the top floor of MFC's building but later moved down the street. CMS generated mortgage leads for MFC. Kahn contends that she was not affiliated with CMS.

In an affidavit, Abraham explained that B2B keeps regular records of its business with its clients in a "Client Table." One entry on this "Client Table" lists MFC,[2] with "Julia Kahn" recorded as a contact. These records show that on October 20, 2005, B2B first made contact with

---

[1] The TCPA prohibits the use of "any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement," unless the sender and recipient have "an established business relationship," the recipient voluntarily made its fax number available, and the unsolicited fax contains a notice meeting certain statutory and regulatory requirements. 47 U.S.C. § 227(b)(1)(C), (b)(2)(D); 47 C.F.R. § 64.1200(a)(4).

[2] B2B records actually list "Manufactures Mortgage Corp." rather than "Manufacturers Financial Corporation" but given that the court needs to consider all evidence in the light most favorable to the non-moving party, we assume that these records refer to MFC. Moreover, defendants do not contend that this record refers to any other company.

MFC and sent MFC information. These B2B records further detail dates throughout the next couple of months when B2B received information to draft an ad for MFC, when the ad was faxed for MFC's approval, when MFC approved the ad, when B2B was paid, and when the faxes were sent out.

B2B also received faxes regarding the ads that contained MFC's header from both MFC's Grosse Pointe and Farmington offices. Specifically, on November 11, 2015, B2B received a fax from the MFC Farmington office that included a "Free 'Ad Details' Form" on which Kahn had corrected her telephone number and written in "see attached." The attachments included two advertising flyers. Although Kahn testified that the hand-marked changes on the flyers were not her handwriting, she did identify the second attached flyer as one that MFC had used previously.

Additionally, on November 23, 2005, B2B received another fax from the MFC Farmington office. This fax included earlier versions of the ads that were eventually faxed to the plaintiffs, in violation of the TCPA, with handwritten edits. Kahn identified the edits on one of the ads as her handwriting but also stated that she did not remember working with these ads. These edits in Kahn's handwriting were ultimately incorporated into Fax Two, which was received by the plaintiffs from B2B. The November 23 fax also included an attached letter, with Kahn's signature block, stating that she "didn't like the ad, so here is a different one." Kahn stated in her deposition, however, that she did not remember ever working with B2B on a fax advertisement campaign.

Finally, the check that was used to pay B2B for the two ads was issued by CMS and signed by Brundage. But the faxed version of the check was sent from MFC's fax machine and included the header for MFC's Farmington office. The date of this faxed check also corresponded with the date listed in the client table for when MFC paid B2B. Both Stephens and Kahn testified that they did not recall authorizing or working on this fax campaign.

On November 13, 2009, Compressor filed a class action against MFC, Stephens, and Charity Marketing, LLC, alleging violations of the TCPA relating to Fax One and Fax Two. The class was eventually certified and both parties subsequently moved for summary judgment on May 2, 2017. The district court granted summary judgment in favor of all three defendants. The plaintiffs appeal only as to defendant MFC.

## II.

This court reviews a district court's grant of summary judgment de novo. *Minadeo v. ICI Paints*, 398 F.3d 751, 756 (6th Cir. 2005). Summary judgment is appropriate only where there is "no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There exists no genuine issue of material fact where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In considering a motion for summary judgment, the court should "view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party." *Minadeo*, 398 F.3d at 756.

### A.

The TCPA provides that a person may not "use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C). At the time Fax One and Fax Two were sent, the FCC "defined the 'sender' of a fax as 'the entity or entities on whose behalf facsimiles are transmitted.'" *Siding & Insulation Co. v. Alco Vending, Inc.*, 822 F.3d 886, 895 (6th Cir. 2016) (quoting 1995 Order, 10 FCC Rcd. 12391, 12407). Therefore, to succeed on its TCPA claim, Compressor must show that the offending faxes were sent "on behalf of" MFC.

Under this circuit's precedent, the "on behalf of" standard requires that the plaintiff "more than simply show that the defendant's goods or services were advertised in the offending fax, but need not establish a complete agency relationship between the defendant and the fax broadcaster." *Id.* at 898. Thus, the "on behalf of" standard is a middle ground between strict and vicarious liability. *Id.* In deciding whether the faxes sent by B2B were on behalf of MFC, this court considers a variety of factors including:

> [1] the degree of input and control over the content of the fax(es), [2] the actual content of the fax(es), [3] contractual or expressly stated limitations and scope of control between the parties, [4] privity of the parties involved, [5] approval of the final draft of the fax(es) and its transmission(s), [6] method and structure of payment, [7] overall awareness of the circumstances (including access to and control over facsimile lists and transmission information), and [8] the existence of measures taken to ensure compliance and/or to cure non-compliance with the TCPA.

*Id.* at 899.

Here, the district court found these factors to favor MFC, stating that "[t]here is no evidence that anyone acting on behalf of MFC approved the final draft of the fax ads, paid for them, or authorized the faxes to be sent." DE 149, Op., Page ID 6299. However, this statement is inaccurate. Taking all evidence in the light most favorable to Compressor, a reasonable juror could have concluded that MFC edited the fax ads, approved the final drafts, and paid for them. For example, there is evidence showing that Kahn, an MFC employee, provided edits on Fax Two and that those edits were incorporated in the final version that was sent out. Although Kahn claims that she never authorized nor remembered working on an advertisement campaign with B2B, she did admit that her handwriting was on faxes that were sent between B2B and MFC. Additionally, records show repeated correspondence between the two companies, including faxes from MFC offices to B2B, and B2B's client table recorded dates on which B2B sent the ads to MFC for final

approval. From this evidence, a reasonable juror could find that MFC contracted with B2B, had input and control over the content of the faxes, and approved the final drafts.

Moreover, a jury could reasonably find that it was really MFC, rather than CMS, that paid B2B for the ads. Although B2B was technically paid by a CMS check, the faxed version of the check was sent from a MFC office, during MFC's business hours. Moreover, the check was signed by Brundage, a MFC employee. Additionally, the corporate divide between MFC and CMS is questionable: CMS generated leads only for MFC, was owned by a MFC employee, and resided in the same building as MFC for a period of time. From the totality of these facts, a reasonable juror could conclude MFC paid B2B for the ads and also had input and final say in the ads. Thus, there exists a genuine dispute of material fact as to whether the ads were sent on behalf of MFC.

The Eleventh Circuit's decision in the factually similar *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris*, *D.D.S., P.A.*, 781 F.3d 1245 (11th Cir. 2015), supports our conclusion. In *Palm Beach*, the defendant, Dr. Sarris owned his dental practice and hired a marketing manager, giving the manager "free rein" to market the dental practice. *Id.* at 1249. That marketing manager hired B2B, who then sent out faxes advertising Dr. Sarris's practice. *Id.* Although there was evidence that Dr. Sarris never approved the ads, the *Palm Beach* court concluded that "there [was] sufficient record evidence to support having a jury decide whether the fax was sent on behalf of [Dr. Sarris]." *Id.* at 1258. Here, CMS generated leads only for MFC, essentially acting as a marketing manager for it. And CMS worked directly with B2B and eventually paid B2B to send out the faxes advertising for MFC that are at issue. Therefore, under the reasoning of *Palm Beach*, although MFC may not have explicitly approved the final draft, the faxes could still have been sent on MFC's behalf.

MFC argues that *Palm Beach* is distinguishable from the current case because the defendant there paid B2B, while here, CMS, not MFC, paid B2B. However, as discussed above, CMS seems closely linked with MFC and the payment was faxed from one of *MFC*'s offices. Therefore, the sole fact that the check was issued from CMS does not necessitate a finding that the faxes were not sent on behalf of MFC.[3]

Looking at the content of the faxes themselves, the district court noted that Fax Two did not contain any information identifying MFC and that Compressor did not testify that it received Fax One. But Fax One did include all of MFC's information, and the district court erred in assessing Fax One and Two independently of each other. All of the correspondence between MFC and B2B shows that the two ads were discussed together as one transaction and, in fact, the payment to B2B specifically stated that it was for both faxes. Furthermore, although Compressor never showed that it received Fax One, an expert witness can establish that Fax One was sent to Compressor and the other class members. *See Palm Beach*, 781 F.3d at 1249 (holding that summary judgment was inappropriate even though "no employee of [the plaintiff] could recall actually seeing or printing the fax advertisement" because "the expert report [confirmed] the successful fax transmission . . . to Plaintiff's fax machine").

Lastly, the district court pointed to the fact that the faxes all contained the message that they were the exclusive property of B2B to find that the ads were not sent "on behalf of" MFC. However, this message was present on the faxes in all the B2B TCPA cases, including ones where the claims survived summary judgment. *See, e.g.*, *Siding*, 822 F.3d at 900–02. Thus, this fact is

---

[3] It is also irrelevant that CMS is not technically an employee of MFC, as was the marketing manager of Dr. Sarris's practice in *Palm Beach*, because the "on behalf of" standard does not require that the person contracting with B2B be "an employee acting within the scope of his employment." *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1249 (11th Cir. 2015). That requirement is only for vicarious liability.

not determinative of the "on behalf of" question, and the district court erred in granting summary judgment.

B.

MFC also asks that the panel affirm the district court's grant of summary judgment on alternative grounds—that the Abraham declarations are inadmissible hearsay and thus cannot be considered to support Compressor. The district court did not rule on this admissibility issue below, and "[a]s a general rule, appellate courts do not consider any issue not passed upon below." *Sutton v. St. Jude Med. S.C., Inc.*, 419 F.3d 568, 575 (6th Cir. 2005) (quoting *Dubuc v. Mich. Bd. of Law Exam'rs*, 342 F.3d 610, 620 (6th Cir. 2003)). MFC argues that the panel should rule on this admissibility issue because the appellate court makes "an independent review of the evidence" on summary judgment. CA6 R. 20, Appellee Br., at 26. However, in other cases, this court has remanded to the district court to rule on alternative arguments at the summary judgment stage. *See, e.g.*, *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 112 (6th Cir. 1989). Moreover, evidentiary rulings are normally reviewed under an abuse of discretion standard. *United States v. Ford*, 761 F.3d 641, 651 (6th Cir. 2014). Thus, we remand for the district court to decide the admissibility of the Abraham declarations in the first instance.

III.

Accordingly, we reverse the grant of summary judgment and remand to the district court for further proceedings consistent with this opinion.